GALLERY HOUSE, INC., Plaintiff,

v.

Alan YI d/b/a Capital Trading Company, and Joy's Clock Shop, Ltd., Defendants.

No. 84 C 1425.

United States District Court, N.D. Illinois, E.D.

March 21, 1984.

Bruce S. Sperling, Peter C. Warner, Sperling, Slater & Spitz, Chicago, Ill., for plaintiff.

James T. Fitzgibbon, James T. Fitzgibbon, P.C., Jay Erens, Levy & Erens, Chicago, Ill., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND PRELIMINARY INJUNCTION ORDER

BUA, District Judge.

The above-captioned matter, having come on to be heard on plaintiff's motion for preliminary injunction, and the Court having heard the testimony of the witnesses, having examined the exhibits introduced into evidence, does hereby enter the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## I. FINDINGS OF FACT

### The Parties

1. Plaintiff, Gallery House, is an Illinois corporation having offices and a principal place of business in the Merchandise Mart Plaza, Chicago, Illinois.

2. Defendant, Alan Yi d/b/a Capital Trading Company ("Capital"), is a sole proprietorship owned and operated by Alan Yi, an individual having offices at 2879 152nd Avenue, N.E., Redmond, Washington.

3. Defendant, Joy's Clock Shop, Ltd. ("Joy's"), is an Illinois corporation having offices and a principal place of business at 835 North Michigan Avenue, Chicago, Illinois.

4. Plaintiff, Gallery House, is in the business of designing and marketing artistic brass statues. Plaintiff contracts for manufacture, and distributes and sells its designs on a nationwide basis. Gallery House markets its line of brass statues under the trade name "Dolbi-Cashier."

5(A). Each of the copyrighted designs here in issue were authored by Gallery House as works "made for hire," as indicated in the copyright registrations specifically referred to below. In this regard, the designs were authored by regular employees of Gallery House, and free-lance artists hired to work on the premises of Gallery House under the direct supervision and control of Gallery House's president, Mr. Shulman. Mr. Shulman conceived the ideas, gave directions to the artists and supervised their work until the designs he desired were achieved.

(B). After each of the statue designs here in issue was finally approved by Mr. Shulman, Gallery House sent the designs to a contract mold maker and manufacturer in South Korea, namely Keang Nam Brassware Company ("Keang Nam"). Keang Nam then made molds, produced sample statues, and sent either a sample or a picture of a sample to Gallery House for final approval (or further modification) prior to manufacture. Upon receipt of Gallery House's final approval, Keang Nam produced the quantity ordered by Gallery House, affixed the appropriate copyright notice to the bottom of the statue stating that the copyright was owned by "Dolbi-Cashier," packaged each statue and shipped them to Gallery House in the United States. Specifically, the notice for each statue stated "© Dolbi-Cashier" followed by the year date of first publication.

6. Prior to the institution of the instant lawsuit on February 15, 1984, the United States Copyright Office issued a Certificate of Copyright Registration to Gallery House for each of the following designs:

| Name of Work | Design Number | Copyright Registration Certificate # |
|---|---|---|
| Bird on Branch Design | 1106 | VA 71–810 |
| Bird Handle Rope Vase By David Karsh Design | 1253 | VA 107–139 |
| Brass Peacocks Design | 1422 | VA 107–127 |
| Stretching Swan | 1452 | VA 116–012 |
| Elephant Head Bookends | 1492 | VA 134–735 |
| Oriental Peacocks | 1498 | VA 134–751 |
| Art Impressionistic Bird | 1502 | VA 134–742 |
| Brass Leaf Vase Large (Derivative Work therefrom: Brass Leaf Vase Small) | 1549 1548 | VA 145–464 |
| Brass Peacock | 1551 | VA 145–467 |
| Brass Sculptured Dolphin | 1565 | VA 145–465 |
| Peacock Covered Dish Large (Derivative Work therefrom: Peacock Covered Dish Small) | 1568 1567 | VA 145–466 |

7. Each of the above-referenced works was produced and marketed on or before

July 1, 1983. Subsequent to July 1, 1983, Gallery House terminated Keang Nam as one of its manufacturers of brass statues.

8. Defendant Capital is an importer and nationwide distributor of brass statues. Subsequent to July 1, 1983, Capital began offering for sale and selling throughout the United States brass statues identified in its catalogs by the following numbers (the "infringing works"):

1106, 1253, 1422, 1452, 1492, 1498, 1502, 1548, 1549, 1551, 1565, 1567, 1568

Each of Capital's infringing works (i) is supplied to it by Keang Nam, (ii) is made from the same molds previously used to produce Gallery House's statues, and (iii) is even identified by the same item number previously assigned by Gallery House to its statues.

9. Capital attended the Chicago Gift Show held in Chicago, Illinois during the week of January 30, 1984. At that show, Capital distributed its catalog containing pictures of the infringing works, offered those items for sale, and sold certain of those items to the trade and purchasing public.

10. Included in Capital's sales to the trade during the Chicago Gift Show, were the sale and delivery to defendant Joy's of items identified above in Paragraph 8 as Nos. 1422 and 1502. Joy's, in turn, subsequently offered for sale and sold those items to the purchasing public.

11. On or about February 6, 1984, plaintiff, Gallery House, notified defendants that they were infringing Gallery House's above-said copyrights and demanded that such infringement cease immediately. Defendants ignored these demands, and continued to offer for sale and sell the infringing works. On February 17, 1984, pursuant to motion, the Court entered a Temporary Restraining Order enjoining defendants Capital and Joy's from further sale, offering for sale and distribution of the infringing works. On February 26, 1984, defendants Capital and Joy's individually agreed to a ten-day extension of the Temporary Restraining Order until March 8, 1984. On March 8, 1984, the Court further extended the Temporary Restraining Order until March 9, 1984, when this Court held an evidentiary hearing on Plaintiff's Motion for Preliminary Injunction.

12. To the extent that any of the foregoing findings of fact are deemed to be conclusions of law, they are hereby adopted as conclusions of law.

## II. CONCLUSIONS OF LAW

### Jurisdiction and Venue

On the above and foregoing findings of fact, the Court makes the following conclusions of law:

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338, in that this action arises under the Copyright Laws of the United States (17 U.S.C. § 101 et seq.), and the amount in controversy exceeds the sum or value of Ten Thousand ($10,000) Dollars exclusive of interest and costs.

2. This Court has personal jurisdiction over each defendant. Defendant Joy's is an Illinois corporation having offices and a principal place of business in Chicago, Illinois. Defendant Capital traveled to and stayed in Chicago, Illinois, during the week of January 30, 1984. During this time, Capital offered for sale all of the infringing works, and sold and delivered certain of them. Further, defendants Capital and Joy's agreed to an extension of the Temporary Restraining Order originally entered by the Court in this matter on February 17, 1984. Consequently, jurisdiction over the persons of the defendants is present.

3. Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400. The claims asserted herein arose within this district, and both defendants are found within this district. Additionally, defendant Joy's maintains its principal place of business within this district.

### Legal Standards

4. The standards for issuance of a preliminary injunction in a case of alleged copyright infringement were recently stat-

ed by the United States Court of Appeals for the Seventh Circuit as follows:

(1) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue; (2) whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant; (3) whether the plaintiff has at least a reasonable likelihood of success on the merits; and (4) whether the granting of a preliminary injunction will disserve the public interest. *Atari, Inc. v. North American, et al.*, 672 F.2d 607, 613 (7th Cir.1982).

As to the substantive merits of a copyright claim, the court further stated:

To establish infringement a plaintiff must prove ownership of a valid copyright and "copying" by the defendant. Because direct evidence of copying often is unavailable, copying may be inferred where the defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work. *Atari, supra*, at 614.

### Copyright Ownership and Notice

■ 5. As stated above in Paragraph 6, plaintiff owns Certificates of Copyright Registration for each of the works here in issue. By statute, those registrations "constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. Sec. 410(c).

■ 6. In addition, the evidence showed, as stated in Paragraph 5 above, that the works in issue were "made for hire" by employees of Gallery House. Those persons included Gallery House's president, Mr. Shulman, and certain free-lance artists employed by Gallery House to work on its premises under the direct supervision and control of Mr. Shulman and for the purpose of drawing his ideas on paper. Consequently, Gallery House is deemed the author of these works. *Nimmer, On Copyright*, § 5.03[B][1] at pp. 5–12 ("In determining whether a work is written in an employment relationship ... one may be an employee regardless of

whether he is paid ... on a piece work basis ... The crucial question is whether the alleged employer has the right to direct and supervise the manner in which the writer performs his work.")

■ 7. Contrary to defendants' contention, the mold maker, Keang Nam, in South Korea, is not the author of the copyrights in issue. The evidence was unequivocal that Keang Nam simply followed the detailed designs prepared by Gallery House, and produced molds pursuant thereto. As such, Gallery House is the author of the designs in issue. Consequently, Keang Nam would not even be in a position to claim copyright in the statues produced by it as "derivative works." It is well settled that where a subsequent work is "derived" from an underlying design, that maker has no right to claim copyright (1) unless specifically licensed to do so by the author of the underlying design, and (2) unless the alleged derivative work comprises an original artistic addition to the underlying design. *Gracen v. Bradford Exchange*, 698 F.2d 300, 302 (7th Cir.1983). Here, any claim by Keang Nam would fail for both reasons. It was not authorized by Gallery House to obtain a copyright in any derivative work. *Bradford Exchange, supra*, at 302 ("even if Miss Gracen's painting and drawing had enough originality to be copyrightable as derivative works, *she* could not copyright them unless she had authority to use [the underlying] copyrighted materials") (emphasis original). Moreover, Keang Nam did not add any artistic effort. It simply converted a two-dimensional design to a three-dimensional object, which, without sufficient original artistic contribution, does not constitute a copyrightable effort. *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 911 (2nd Cir.1980) ("The mere reproduction of the [underlying] characters in plastic, even though ... [it] undoubtedly involved some degree of manufacturing skill, does not constitute originality as this Court has defined the term.")

Further, Keang Nam apparently had no question about the ownership of the copy-

**1298**

rights in issue; the evidence showed that Keang Nam placed copyright notices on each statue molded by it which stated "© Dolbi-Cashier" followed by the date.

■ 8. The copyright notices affixed to the works in issue by Keang Nam were in accordance with 17 U.S.C. § 401.

### Infringement

■ 9. The evidence also showed that the infringing works were "copied" from Gallery House's copyrighted works. First, the evidence showed that the infringing works were made from the same molds previously used to produce the copyrighted works. This is direct evidence of copying. There is, of course, also inferential evidence of copying. Without question, defendant and its supplier, Keang Nam, had "access" to the copyrighted designs; and, a comparison of the copyrighted designs to the pictures of the infringing works in Capital's catalog showed them to be virtually, if not exactly, identical. Likewise, the infringing statue actually purchased from defendant Joy's was indistinguishable from Gallery House's item No. 1502.

### Conclusion: The Criteria For Preliminary Injunctive Relief Have Been Satisfied.

■ 10. The court concludes that the plaintiff has shown "at least a reasonable likelihood of success." *Atari, supra,* at 613, with respect to establishing (i) that it owns valid and subsisting copyrights in each of the works in issue, and (ii) that defendants have infringed those copyrights.

11. The other requirements for preliminary injunctive relief also have been satisfied. In copyright infringement cases, irreparable injury is generally presumed upon a showing of infringement. *Atari, supra,* at 620. Also, plaintiff's marketplace credibility as a designer and marketer of an original line of brass statues may be irreparably damaged if copies of its items remain freely available. For this reason, too, a preliminary injunction is appropriate.

12. Further, the balance of the hardships warrant a preliminary injunction. Since plaintiff has shown at least a reasonable likelihood of success on the merits, the defendants ought not be permitted to continue to profit from their copyright infringement. *Atari, supra,* at 620 (the possibility that a defendant will lose profits "merits little equitable consideration"; and, an infringer has no "standing to complain that his vested interest will be disturbed.") Finally, in passing the copyright laws, Congress sought to "encourage individual effort and creativity by granting valuable enforceable right." *Atari, supra,* at 620. For these reasons, the public interest favors the issuance of a preliminary injunction under the present circumstances.

13. Based on the evidence before the Court, it is concluded that the plaintiff shall post security in the amount of $10,000, and that in lieu of bond, plaintiff may post a letter of credit in a form acceptable to this Court.

14. Under Rule 65(a)(2), the evidence taken at the preliminary injunction hearing is automatically admissible at trial. Thus, even though these findings of fact and conclusions of law are not binding at trial, a significant change in the record would be necessary to persuade the court to reach a different conclusion. *See cases collected in* WRIGHT & MILLER, Civil Sec. 2950.

15. To the extent that any of the foregoing conclusions of law are deemed to be findings of fact, they are hereby adopted as findings of fact.

### III. PRELIMINARY INJUNCTION ORDER

ACCORDINGLY, IT IS ORDERED that

(1) Defendant Alan Yi d/b/a Capital Trading Company and defendant Joy's Clock Shop, Ltd., together with their officers, agents, servants, employees and attorneys, and all others in active concert or participation with them who receive actual notice of this order, are enjoined during the pendency of this action from selling, offering for sale, advertising or displaying the

items shown in defendant Capital's catalog under numbers:

1106, 1253, 1422, 1452, 1492, 1498, 1502, 1548, 1549, 1551, 1565, 1567, 1568

(2) Pursuant to 17 U.S.C. Sec. 503(a), defendant Alan Yi d/b/a Capital Trading Company and defendant Joy's Clock Shop, Ltd. will, by March 26, 1984, deliver up all copies of the items identified above, and all sections of advertising circulars and/or catalogs displaying these items, to the plaintiff for impoundment during the pendency of this action.

(3) This order will remain effective only upon plaintiff's posting of a $10,000 bond or letter of credit.