**ENTERTAINMENT RESEARCH GROUP, INC., Plaintiffs,**

v.

**GENESIS CREATIVE GROUP, INC. and Aerostar International, Inc., Defendants.**

**No. C 92 2526 SAW (FSL).**

United States District Court, N.D. California.

May 2, 1994.

---

Earl A. Bohachek, Rubinstein & Bohachek, and Kurtis J. Kearl, Cooper, White & Cooper, San Francisco, CA, for plaintiff Entertainment Research Group.

Stephen W. Sommerhalter, Jeffrey L. Fazio, Buchalter, Nemer, Fields & Younger, San Francisco, CA, for defendant and moving party Aerostar Intern. Inc.

Kirk W. Garey, Robins, Kaplan, Miller & Ciresi, San Francisco, CA, for defendant Genesis Creative Group, Inc.

Ronald L. Yin, Limbach & Limbach, San Francisco, CA, for potential intervenor Toys "R" Us.

Robert V. Kuenzel, Proskauer, Rose, Goetz & Mendelsohn, San Francisco, CA, for potential intervenor Hanna–Barbera Productions.

Larry W. McFarland, Baker & Hostetler, Los Angeles, CA, for potential intervenor Quaker Oats Co.

ORDER RE DEFENDANT AEROSTAR'S MOTION FOR PARTIAL SUMMARY JUDGMENT HEARD ON APRIL 21, 1994

LANGFORD, United States Magistrate Judge.

## I. INTRODUCTION

This case unites together old adversaries in the arena of advertising to pit them collectively against a common foe in an arena to which they are not accustomed; the federal courtroom. Creatures which are normally docile and pleasant as they hawk their wares have now turned hostile and litigious. The Pillsbury "Doughboy", "Toucan Sam", "Dino the Dinosaur", "Geoffrey the Giraffe", "Oatis Oat Square", "Little Sprout" and yes, even that smiling old salt "Cap'n Crunch" have abandoned their jocular demeanor, joined forces and donned their battle garb in order to engage an enemy far more dangerous than any competitor encountered on the commercial airwaves: the derivative copyrighter.

Their common foe is Plaintiff Entertainment Research Group (ERG). ERG (with

authorization from the original copyright holders), manufactures three-dimensional, inflatable costumes of the above named characters for use in grocery stores, shopping malls and other appropriate venues. In an attempt to protect its work, ERG attached copyright notices to the derivative costumes. Defendant Aerostar (another costume manufacturer), is accused of copying these costumes and infringing upon ERG's copyrights. As a defense, Aerostar has brought a summary judgment motion asserting that ERG has not created anything entitled to copyright protection and therefore Aerostar cannot be guilty of copyright infringement. Although not parties to this action at the time of the hearing, Hanna–Barbera, Quaker Oats, Toys "R" Us (some of the owners of the original copyrights), were present by their counsel and voiced disapproval of Plaintiff's derivative copyright assertion. They stand poised to intervene, pending the outcome of this motion.

## II. COPYRIGHT VALIDITY

■ Defendant Aerostar brings this motion for summary judgment claiming ERG's copyright is not valid. To establish copyright infringement, the holder of the copyright must prove both valid ownership of copyright and infringement of that copyright by the alleged infringer. The registration of a copyright certificate itself establishes a prima facie presumption of validity, which may be rebutted by a showing on the part of the alleged infringer that the copyright holder's work is not original. Since Aerostar has put ERG's copyrights in dispute, ERG must prove the validity of its copyright as a threshold issue. Without proper copyright protection any infringement claim is moot and summary judgment rejecting the alleged infringement claim is appropriate.

Plaintiff ERG contends they are entitled to copyright protection for their creation of inflatable derivative works which are based on previously copyrighted characters (i.e., ERG is claiming a derivative copyright in their

inflatable "Doughboy", where Pillsbury obviously owns the underlying copyright for the "Doughboy").

The first issue to be decided is whether or not ERG is entitled to a derivative copyright. This requires the court to determine the scope of derivative copyrights and decide whether ERG's inflatable derivative costumes fall within the boundaries delineated by copyright law.

Section 101 of the Copyright Act defines a derivative work as:

> a work based upon one or more pre-existing works, such as a translation, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work".

17 U.S.C.A. § 101.

Although there is relatively little guidance from the Ninth Circuit[1] on derivative copyrights where the underlying work is *not* in the public domain, the Court of Appeals for the Second Circuit has considerable experience with the question of derivative copyrights and we now turn to that circuit for guidance.

The Second Circuit has held that in order to constitute a separately protectable derivative work, an adaptation of a preexisting work must contain "some substantial, not merely trivial, originality." *L. Batlin & Son v. Snyder,* 536 F.2d 486 (2d Cir.1976), *cert. denied,* 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976).

■ The Second Circuit further refined this test in *Durham Industries, Inc. v. Tomy Corp,* 630 F.2d 905 (2d Cir.1980), where they

---

1. The Ninth Circuit has, however, voiced its approval for summary judgment in cases where "no reasonable trier-of-fact could find even trivial differences in the designs, for example, where

reproductions are involved." *North Coast Industries v. Jason Maxwell Inc.,* 972 F.2d 1031, 1034 (9th Cir.1992) (citing as authority for this state-

formulated a two pronged test[2]: "First, to support a copyright the original aspects of a derivative work must be more than trivial. Second, the original aspects of a derivative work must reflect the degree to which it relies on preexisting material and *must not in any way affect the scope of any copyright protection in that preexisting material.*" *Id.* at 909 (emphasis added).

The basis for the second prong of the *Durham* test is § 103(b) of the Copyright Act which provides:

> The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does *not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.*

17 U.S.C.A. § 103(b) (emphasis added).

For the purposes of summary judgment however, this court feels constrained by the Ninth Circuit's decision in *North Coast Industries v. Jason Maxwell Inc.,* 972 F.2d 1031 (9th Cir.1992). In that case, the Ninth Circuit overturned a summary judgment ruling by the district court. The district court had held that the minimum changes in design made by the plaintiff over a work already existing in the public domain were insufficient to warrant copyright protection. In reversing the trial court, the Ninth Circuit stated that summary judgment is appropriate when "... no reasonable trier-of-fact could find even trivial differences in the designs...." *Id.* at 1034.

Although this court is prepared to adopt the language of *North Coast,* an important distinction needs to be drawn between *North Coast* and the case at bar. *North Coast* dealt exclusively with a pattern design imprinted on a dress. There was no aspect of the *North Coast* designs which was functional or useful (or to use language from § 102 of the Copyright Act, there was no aspect of those designs which had a "mechanical or utilitarian aspect").

Unlike the designs in *North Coast,* the costumes at issue in this case are a necessary hybrid of form and function. Unlike *North Coast,* this court must determine the scope of copyright protection and the propriety of summary judgment when elements of artistry and function are intertwined.

Section 102 of the Copyright Act defines the subject matter of copyright. Subsection (a) lists 7 categories of works which are copyrightable including "pictorial, graphic and sculptural works." This court feels that any copyright protection afforded ERG would fall under this category. A quick look at the definition of "sculptural works" under § 101 leads us to relevant, useful language.

The definition states that sculptural works, including works of artistic craftsmanship are entitled to copyright protection "insofar as their form but not their mechanical or utilitarian aspects are concerned." 17 U.S.C.A. § 101. It further states that "the design of a useful ... article shall be considered a ... sculptural work only if, and only to the extent that, such design incorporates ... sculptural features that *can be identified separately from and are capable of existing independently of, the utilitarian aspects of the article.*" 17 U.S.C.A. § 101 (emphasis added).

Based on this, this court finds that any aspect of a "sculptural work" which is driven primarily by a functional, utilitarian or mechanical consideration will not merit copyright protection. Any differences in appearance between a derivative work and the preexisting work which are driven primarily by a functional, utilitarian or mechanical purpose cannot be considered when seeking artistic differences for the purpose of originali-

---

ment *Durham* infra, the case from which we take our derivative copyright test).

**2.** This court adopts the two pronged *Durham* test due to the obvious parallels between *Durham* and the case at bar. *Durham* dealt with the derivative copyrightability of Disney characters which were transformed into three dimensional moving toys.

ty.[3]

This court is certain that ERG's clients would request costumes which are completely identical to their preexisting characters. Any minimal differences in appearance are therefore a result of functional costume considerations, i.e., the costume must be worn by a human.

█ A quick look at ERG's "Toucan Sam" costume illustrates this point. In the preexisting work, "Toucan Sam" has rather short, skinny, rubbery legs placed far apart on "Sam's" torso. In the derivative costume work, "Toucan Sam" has thick, bulky, tall legs which are placed close together on "Sam's" torso. Are these differences the result of an "artistic" decision on the part of ERG? No, they are due to the limitations of the human body. The legs *need* to be thicker, and narrowly spaced. ERG was forced to make an alteration in appearance based on mechanical, functional and utilitarian considerations. No reasonable trier-of-fact could find that these differences were the result of "artistic" decision making.

With this in mind, this court will adopt and apply the two part *Durham* test in light of what the Ninth Circuit has held in *North Coast*. After careful review of photos of the costumes in question this court finds that no reasonable trier-of-fact could find even trivial artistic differences in design between the preexisting work and the underlying work.

Adopting the language of the *Durham* Court to this case, this court finds that:

> [o]ne look at [ERG's costumes] reveals that, in each, the element of originality that is necessary to support a valid copyright is totally lacking. For [some time these characters] have peered at us from [television sets, product labels, newspapers] and a variety of other media, and it would be safe to say that they have a recognition factor that any politician or celebrity would envy. The [ERG costumes] are instantly identifiable as embodiments of the [advertising] characters in yet another form: [Toucan Sam, Dino the Dinosaur, Doughboy, Little Sprout, Cap'n Crunch, Oatis Oat Square and Geoffrey the Giraffe] are now represented as [three-dimensional walk-around costumes].

*Durham*, 630 F.2d at 909 (citations omitted).

The linchpin of this derivative copyright claim is originality in appearance. It fails because ERG's clients do not want original looking costumes. On the contrary, what ERG's customers ask for is exact replication. Pillsbury necessarily wants a costume which people recognize as their "Doughboy", not an artistic derivation or interpretation of it[4]. Replications which do not include trivial differences in appearance are not entitled to copyright protection. Ironically, the very thing which precludes ERG from obtaining derivative copyright protection in their costumes is what makes them successful in the business of costume making: the ability to

---

3. The problem created by architectural works is similar to the one at bar. Congress wanted to grant protection to the outward artistic appearance of the building, but was wary of granting copyright protection to those aspects of appearance which were driven by functional considerations. Further elucidation is provided by the historical notes which follow § 102 of the Copyright Act. The House committee report considered the special problem created by architectural works and stated:

> Purely nonfunctional or monumental structures would be subject to full copyright protection under the bill, and the same would be true of artistic sculpture or decorative ornamentation or embellishment added to a structure. *On the other hand, where the only elements of shape in an architectural design are conceptually inseparable from the utilitarian aspects of the structure, copyright protection for the design would not be available.*

H.R.Rep. No. 94–1476 at 55 (1976) (emphasis added).

4. The court had chosen "Toucan Sam" to make an earlier point for ease of illustration, since that character had undergone somewhat of a transformation, once again due to only functional considerations. "Dino the Dinosaur" has even smaller differences in appearance, again due to function, which are less apparent whereas "Doughboy", "Little Sprout", "Cap'n Crunch", "Oatis Oat Square" and "Geoffrey the Giraffe" are virtually indistinguishable from the preexisting work. This court does not dispute that ERG has great manufacturing skill or that it has spent a great deal of time and effort in creating these costumes. Unfortunately, under the copyright laws, the input does not merit protection under that system.

manufacture walk-around life-sized replicas of these characters with what appears to be relative precision and accuracy.

Furthermore, Federal Courts have not been inclined to extend derivative copyright protection for conversion of a two-dimensional design into a three-dimensional object,[5] where the three-dimensional object lacks the requisite originality. "The mere reproduction of the underlying characters in plastic, even though ... [it] undoubtedly involved some degree of manufacturing skill, does not constitute originality as this Court has defined the term." *Durham*, 630 F.2d at 911. In *Gallery House, Inc. v. Yi*, 582 F.Supp. 1294 (N.D.Ill.1984), the court refused to grant a derivative copyright to a moldmaker stating that "[the moldmaker] did not add any artistic effort. It simply converted a two-dimensional design to a three-dimensional object, which, without sufficient original artistic contribution does not constitute a copyrightable effort." *Id.* at 1297.

ERG also fails the second prong of the *Durham* test in that any granting of derivative copyrights in an inflatable "Doughboy" would "simply put a weapon for harassment in the hands of mischievous copiers." *Durham*, 630 F.2d at 910. This court does not intend to characterize ERG as a "mischievous copier". However, the fear of the Durham Court and this court as well, is that ERG would have a pseudo-monopoly on all inflatable "Doughboys". Any subsequent costume makers and the original copyright holders themselves (Pillsbury, for example) would be limited by the granting of a derivative copyright in this situation or at the very least be vulnerable to harassment. One need only look at the procedure for registering a copyright to see that this fear is well-founded. Copyright Office procedure requires only that an image of the copyrighted article be submitted along with a registration form for the work. In order to substantiate a prima facie case of infringement, a company such as ERG would need only to submit their copyright registration along with a photo-graph of the infringing costume which would necessarily look like Plaintiff's.

To avoid this potential harassment liability, a subsequent costume-maker would need to make significant changes in the "Doughboy's" appearance, which would detract from the original character, in which ERG has no copyright. As a result, Pillsbury's right to copy (or to permit others to copy) its own creation would, in effect, be circumscribed. *See Durham*, 630 F.2d at 911.

### III. CONCLUSION

This court holds that ERG's derivative walk-around costume figures do not merit copyright protection. They lack even a modest degree of artistic originality and the grant of a derivative copyright would affect the scope of the copyright protection in the preexisting material. Therefore, as to "Toucan Sam", "Dino the Dinosaur", "Doughboy", "Little Sprout", "Cap'n Crunch", "Oatis Oat Square" and "Geoffrey Giraffe", we need not consider the question of copyright infringement by Aerostar.

This court suspects ERG is attempting to gain copyright protection in the ideas of structure, methods and function which support and make up the internal workings of the inflatable walk-around costumes. Unfortunately, this is not the realm or jurisdiction of Copyright law. Protection for the "useful arts" (if warranted in this case), is found in the patent system. Defendant's motion for partial summary judgment is hereby GRANTED.

---

**5.** In the case at bar the conversion does not approach this magnitude, since many three-dimensional interpretations of the copyrighted characters already exist (e.g., almost everyone is familiar with the famous Pillsbury "Doughboy" which has appeared as a three-dimensional character in countless television commercials over the years).