**Angelo THEOTOKATOS, Plaintiff,**

v.

**SARA LEE PERSONAL PRODUCTS, Defendant,**

**SARA LEE PERSONAL PRODUCTS, Third–Party Plaintiff,**

v.

**ANDAZIA INTERNATIONAL, INC., Third–Party Defendant.**

No. 96 C 4094.

United States District Court, N.D. Illinois, Eastern Division.

July 8, 1997.

---

William Luciano Niro, Keith A. Vogt, Niro, Scavone, Haller & Niro, Ltd., Chicago, IL, for Angelo Theotokatos.

Bradford P. Lyerla, Mark K. Suri, Jenner & Block, Chicago, IL, for Sara Lee Personal Products.

Kenneth Steven Ulrich, Oscar L. Alcantara, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Chicago, IL, Daniel A. Reidy, San Francisco, CA, for Andazia International, Inc.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

This case concerns an individual, Mr. Theotokatos, who sued Sara Lee Personal Products for infringing his copyright in two designs related to the 1996 Summer Olympics in Atlanta. Sara Lee in turn sued its sublicensee Andazia, seeking contractual indemnity for expenses flowing from Mr. Theotokatos' claim. Presently pending before the court are (1) Andazia's motion to dismiss both the underlying claim by Mr. Theotokatos against Sara Lee and Sara Lee's claim against Andazia, and (2) Sara Lee's motion for summary judgment in its favor on the indemnity claim against Andazia.

## RELEVANT FACTS

Sara Lee Personal Products ("Sara Lee"), which has its principal place of business in North Carolina, makes and sells active-wear clothing. Included in this business is a line of plain and imprinted T-shirts. Sara Lee also sells plain T-shirts to others who may imprint their own designs on the T-shirts to use or sell for their own benefit. On December 18, 1992, Sara Lee entered into a Merchandise Agreement with Atlanta Centennial Olympic Properties, the United States Olympic Committee, and the Atlanta Committee for the Olympic Games to become a major sponsor and licensee of the 1996 Summer Olympics. Under the Merchandise Agreement, Sara Lee was granted a limited right to sublicense to others the use of certain Olympic trademarks for certain products in limited markets.

Sara Lee entered into sublicense agreements with twenty-eight different sublicensees, including Andazia, a T-shirt company located in California. Under their Sublicense Agreement of February 1, 1994, Sara Lee granted Andazia limited rights to use the Olympic marks for certain products, such as T-shirts, in certain limited markets. In addition, the Agreement contained an indemnification provision, under which:

> Sublicensor and Sublicensee shall promptly notify each other of any claim that is asserted, and of any action or proceeding that is threatened or commenced, in which a third party alleges that any of the Products manufactured by Sublicensee or the packaging, selling, or display materials used by Sublicensee in connection therewith infringe the property rights of such third party....
>
> Sublicensee agrees to indemnify and hold Licensor and Sublicensor, including Sublicensor's subsidiaries, affiliated companies, divisions, officers, directors, employees, and agents, harmless from and against any and all costs, expenses, losses, and damages, including attorneys' fees, arising from (i) claims of injury or damage suffered by third parties as a result of the manufacture, sale, distribution, or consumption of the Products and (ii) claims for injuries or damages suffered by Subli-

censor and/or Licensor as a result of the breach of this Agreement by Sublicensee. With respect to third-party claims falling within the scope of the foregoing indemnifications, Sublicensee agrees to notify promptly Licensor and Sublicensor in writing of, and to keep Licensor and Sublicensor fully advised with respect to, such claims, and the progress of any legal actions relating thereto in which neither Licensor nor Sublicensor is a participant. Either Licensor or Sublicensor shall have the right to assume the defense of a claim instituted against it for which Sublicensee is obligated to indemnify Licensor and Sublicensor....

During this time period, from March 1993 through October 1994, Angela Townsend was Sara Lee's Olympic Licensing Coordinator. According to Ms. Townsend's declaration, her duties included contract administration for the Olympic trademark licensing program. She stated that she would communicate to the sublicensees usage guidelines for proper use of the Olympic trademarks in graphic designs and in text. Sublicensees would submit to her their prepared designs for an initial review for trademark approval and quality control. Ms. Townsend would then advise the sublicensees if there were any non-conformities to the USOC's trademark usage requirements. After making the requisite corrections, sublicensees would send the modified proposed design back to her. She would then forward the proposed design to the USOC for its review and receive comments back from the USOC. Once she transmitted these comments back to the appropriate sublicensee, Ms. Townsend would work with the sublicensee to correct usage of Olympic trademarks.

Ms. Townsend asserts that each sublicensee created its own designs, while Sara Lee's role was limited to reviewing designs for proper Olympic trademark usage. She claims that Sara Lee provided a limited role in the design making process and could not possibly review each submission for copyright problems as they received enough submissions to fill fourteen linear feet of notebooks. Andazia, however, disputes this claim. A June 9, 1994 Sara Lee memo to

Ms. Townsend indicates that Sara Lee independently investigated whether another one of Andazia's proposed designs infringed upon rights of third parties, conducting a search and drafting a short legal opinion on the basis of the investigation. Andazia claims that Sara Lee played an active role in the design making process and also made its own copyright reviews.

On July 5, 1994, Angelo Theotokatos registered two of his designs with the United States Copyright Office for copyright protection. The designs were registered as derivative works and described as arrangements of the flags of various nations and the Olympic rings motif. One design is a circular arrangement of flags of past Olympic host countries with the Olympic torch and rings in the center ("Circular Design"). The other design is a horizontal arrangement of flags of past Olympic host countries with the Olympic torch and ring between the rows ("Horizontal Design"). The registration described Mr. Theotokatos' copyrightable contribution as "[s]election and arrangement of preexisting elements with new artwork."

At some point after this, in 1994, Mr. Theotokatos submitted his designs to Sara Lee for possible use on T-shirts. Sara Lee rejected Mr. Theotokatos' designs, but Ms. Townsend advised him that he could contact Sara Lee's sublicensees for the use of his designs, and gave him a list of the sublicensees. No one at Sara Lee gave Andazia or any other sublicensee any of Mr. Theotokatos' submissions.

Andazia created one of the designs in dispute in 1994 ("Andazia Design"). Like the Circular Design copyrighted by Mr. Theotokatos, the Andazia Design includes a roughly circular arrangement of the flags of past Olympic host countries with the Olympic torch, flames and rings in the center, as well as a number of other design elements. Andazia formally submitted the design to Sara Lee for approval in January 1995. The design was approved and released as early as February 1995. Andazia then imprinted its design on T-shirts and sold them.

Mr. Theotokatos and representatives from Andazia attended the Chicago NSGA show in July 1995. Mr. Theotokatos has claimed that Andazia obtained access to his work at this show, although no one from Andazia remembers seeing Mr. Theotokatos at that time and Andazia's design had been created and approved for sale several months earlier.

According to a letter dated January 31, 1997, from Mr. Theotokatos' attorney to Andazia, Mr. Theotokatos first contacted Sara Lee about a possible copyright infringement ten months before the lawsuit was initiated. This would be September 1995, as the complaint was filed in July 1996. Sara Lee never notified Andazia that Mr. Theotokatos made contact at this point.

On January 25, 1996, Mr. Theotokatos' attorney wrote a letter to Andazia, expressing concern over a possible copyright infringement by one of its T-shirt designs that was substantially similar to Mr. Theotokatos' design. He requested any further information that could resolve this issue. On January 30, 1996, Andazia replied, stating that it did not find substantial similarity between the designs, and that there was no copyright infringement because the designs contained nonprotectible common elements, the expressions of which are different.

On February 28, 1996, Mr. Theotokatos' new counsel wrote a letter to Andazia claiming substantial similarity between the designs and sufficient access. He also requested any information that would prove that Andazia's design pre-dated Mr. Theotokatos' design. In a letter dated February 29, 1996, Andazia responded, stating that its T-shirt design was created in 1994, formally submitted for approval to ACOG in January 1995, and released as early as February 1995. Andazia therefore could not have gotten the idea for its design at the Chicago NSGA show in July 1995. Andazia then concluded that, in the absence of any access or substantial similarity, Mr. Theotokatos had no copyright infringement claim against Andazia.

Andazia's counsel then forwarded copies of all of his correspondence with Mr. Theotokatos' attorneys to Sara Lee, explaining that Mr. Theotokatos' claim lacked merit because the alleged date of access was six months after Andazia had created its design. In addition, the two designs lacked substantial

similarity. On March 9, 1996, Sara Lee replied to Andazia, stating that it considered the matter closed unless they heard further from Mr. Theotokatos' attorney.

On May 20, 1996, Mr. Theotokatos' third attorney sent a letter to Sara Lee requesting a copy of the release form that Mr. Theotokatos had signed in 1994 when he submitted his designs to Sara Lee. Sara Lee replied on June 13, 1996, stating that Mr. Theotokatos' release was located in off-site storage and it would involve considerable time, effort, and expense to locate it. Sara Lee was unwilling to locate the release without a compelling reason. In the same letter, Sara Lee enclosed copies of all of the correspondence between Andazia and Mr. Theotokatos' previous attorneys and stated that the matter had been thoroughly investigated and was closed. Sara Lee did not inform Andazia of Mr. Theotokatos' request for the 1994 release form, although Sara Lee acknowledged that the request likely involved the same design at issue in the Andazia correspondence.

On July 8, 1996, Mr. Theotokatos filed a complaint against Sara Lee for copyright infringement, replacing it with an amended complaint a few days later. The amended complaint alleges that the Circular Design was infringed by the Andazia Design, and that Mr. Theotokatos' Horizontal Design was also infringed by another Sara Lee T-shirt design (the "Pillar Design").[1] On August 1, 1996, Sara Lee wrote to Andazia, informing the company of Mr. Theotokatos' lawsuit and providing a copy of the summons, complaint, amended complaint, and Sara Lee's motion for an extension of time to answer. In the same letter, Sara Lee also made a formal demand for indemnification under the Sublicense Agreement. Sara Lee advised Andazia that it would assume defense of the case and would remit bills to Andazia for payment under the Agreement.

Andazia responded to Sara Lee's letter on August 15, 1996, in a letter that detailed Andazia's history with Mr. Theotokatos. Andazia's counsel also requested Sara Lee's permission to send a letter to Mr. Theotokatos' counsel explaining why the complaint should be immediately dismissed and expressed a desire to try to resolve the matter informally. Andazia did not expressly take a position on the indemnity issue in this letter.

In a letter dated October 2, 1996, Andazia formally rejected Sara Lee's demand for indemnity under the Sublicense Agreement. Sara Lee moved for and was granted leave to file a third party complaint against Andazia claiming indemnity under Agreement on November 27, 1996.

Andazia filed a motion to dismiss both Mr. Theotokatos' complaint and Sara Lee's third party complaint. Shortly thereafter, Sara Lee filed a motion for summary judgment against Andazia on its indemnity claim. As of today, neither Andazia nor Sara Lee has initiated any discovery against each other.

## ANALYSIS

### I. Andazia's Motion to Dismiss

Andazia has moved to dismiss Mr. Theotokatos' copyright infringement claim against Sara Lee for failure to state a claim. Andazia also seeks to dismiss Sara Lee's indemnity claim against Andazia, reasoning that if there is no underlying claim against Sara Lee, Andazia has nothing to indemnify. We examine these arguments in turn.

A motion to dismiss tests the sufficiency of a complaint, not the merits of a case. *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir.1989). Therefore, when reviewing a motion to dismiss for failure to state a claim, the court must accept as true the factual allegations of the complaint and draw all reasonable inferences in the plaintiff's favor. *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1343 (7th Cir.1995). A complaint should not be dismissed "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which

---

1. Both the Horizontal Design and the Pillar Design contain an arrangement of the flags of past Olympic host countries in chronological rows, with a design in the middle using the Olympic rings and other design elements, although the rows of flags are vertical in the Pillar Design, unlike the rows in the Horizontal Design. Sara Lee has acknowledged that Andazia did not create the Pillar Design, and states that it does not know who created the design. Sara Lee claims it did not make or sell any products bearing that design.

would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). A plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). However, if a plaintiff does plead particulars, and they show he has no claim, then he has pleaded himself out of court. *Thomas v. Farley*, 31 F.3d 557, 558 (7th Cir.1994).

### The Copyright Infringement Claim

■ In order to prevail on a copyright infringement claim, Mr. Theotokatos must prove both "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991); *see also Atari, Inc. v. North Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir.1982). Andazia has argued that Mr. Theotokatos' complaint must be dismissed because it does not meet either prong of the copyright infringement test. First, Andazia claims that Mr. Theotokatos does not have valid copyrights because his designs do not possess sufficient creativity to enjoy copyright protection. Andazia also argues that Mr. Theotokatos' copyrights are invalid because he failed to obtain the proper authorization to use the protected Olympic rings in his design. Finally, Andazia argues that Mr. Theotokatos cannot show that Andazia or Sara Lee copied his designs, because an examination of the designs reveals that there is no substantial similarity between the protectable elements in them.

### A. Minimal Creativity

■ Andazia first argues that Mr. Theotokatos has failed to state a cause of action because his copyrighted designs, appended to his amended complaint, do not meet the required level of creativity to be copyrightable. Mr. Theotokatos registered his designs with the United States Copyright Office on July 5, 1994. Copyright registrations "constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). However, this presumption of validity may be rebutted by the defendant in a copyright infringement action by providing evidence of the copyright's invalidity. *See Runstadler Studios, Inc. v. MCM Ltd. Partnership*, 768 F.Supp. 1292, 1295 (N.D.Ill.1991).

■ Mr. Theotokatos' designs were registered as derivative works composed of "[f]lag designs of various nations and Olympic ring motif." Am. Compl. Ex. A. The copyrighted work added to these preexisting elements was described as their "[s]election and arrangement" with "new artwork." *Id.* A derivative work, based in part or entirely upon preexisting works, may receive copyright protection but it must still satisfy the requirement of originality. "The *sine qua non* of copyright is originality." *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345, 111 S.Ct. 1282, 1287, 113 L.Ed.2d 358 (1991). This requirement is not ordinarily a high hurdle for applicants. "Original, as the term is used in copyright, means only that the work was independently created by the author ... and that it possesses at least some minimal degree of creativity." Id. Although it is difficult to define this originality requirement in an exact manner, it has been described as "modest," "minimal," and a "low threshold." *See FASA Corp. v. Playmates Toys, Inc.*, 912 F.Supp. 1124, 1147 (N.D.Ill.1996) (citing *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908–911 (2d Cir.1980)), *vacated in part on other grounds*, 108 F.3d 140 (7th Cir.1997). The Seventh Circuit has narrowed the test somewhat by requiring that the derivative work be "substantially different" from the underlying work in order to be copyrightable. *See Gracen v. Bradford Exch.*, 698 F.2d 300, 305 (7th Cir.1983). The court relied on *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 491 (2d Cir.1976) in holding that the "substantially different" standard is necessary to prevent an author of a derivative work from interfering with the creation of subsequent derivative works based on the same underlying work. *Gracen*, 698 F.2d at 305. However, even using the "substantially different" standard, the *L. Batlin* court still characterized the originality requirement as "modest." *See L. Batlin*, 536 F.2d at 490.

We find that Mr. Theotokatos' designs possess the requisite level of originality for copyright protection. Although Andazia argues that no creativity was required in Mr. Theotokatos' arrangement of the national flags, Olympic rings, torch, and historical references in his designs, this contention is not supported by case law. In *Runstadler Studios v. MCM Limited Partnership,* a sculpture made of glass rectangles was judged sufficiently original because the "choice of location, orientation and dimensions" of the otherwise standard shapes showed a "more than trivial" level of creativity. *Id.,* 768 F.Supp. at 1295–96. As in *Runstadler, Mr.* Theotokatos contributed a "more than trivial" amount of creative effort to his designs in determining the exact layout of the national flags of past host countries and the central torch design with its specific combination of the Olympic torch and rings with the flags of the United States and Greece and the historical references to commemorate the one-hundred year anniversary of the Summer Olympic Games. Although Andazia correctly states that historical references are not copyrightable, their arrangement within a design may be copyrighted. *See Past Pluto Prods. Corp. v. Dana,* 627 F.Supp. 1435, 1441 n. 6 (S.D.N.Y.1986) ("precise placement" of the historical reference "Statue of Liberty 1886–1986" on foam sculpture may be "in itself an original feature").

Nor are Mr. Theotokatos' Circular and Horizontal Designs obvious arrangements requiring no creativity. In *Towle Mfg. Co. v. Godinger Silver Art Co.,* 612 F.Supp. 986, 991–92 (S.D.N.Y.1985), a baby bottle with glassware cutting designs did not meet the threshold originality test because the designs had been used in the glassware and crystal industry for a long period of time and had been placed in a commonly used configuration. Unlike the design in *Towle,* Mr. Theotokatos' arrangements do not follow any established pattern of presenting flags and Olympic symbols.

This case is also distinguishable from *Gracen v. Bradford Exchange,* 698 F.2d 300 (7th Cir.1983). In *Gracen,* the court found that a drawing of Judy Garland as Dorothy in the Wizard of Oz was not sufficiently different from underlying photos from the movie to meet the creativity requirement for copyright protection of a derivative work. *Id.* at 305. By contrast, Mr. Theotokatos took several preexisting works and combined them into his own design. Mr. Theotokatos' designs do not pose a threat to subsequent authors who wish to use the same underlying preexisting works in their own designs because his copyright is limited to the specific design he created. *See FASA Corp.,* 912 F.Supp. at 1147 ("The copyright protection accorded to derivative works is limited to that portion of the work adding incremental originality beyond the preexisting work."). We find that Mr. Theotokatos' designs present a sufficient level of creative contribution to meet the threshold requirement of originality.

*B. Unauthorized Use*

Andazia also argues that Mr. Theotokatos' copyrights for his designs are invalid because he failed to obtain authorization to use the Olympic rings, a protected design owned by the United States Olympic Committee (USOC). *See* 36 U.S.C. § 380 (granting the USOC exclusive rights to use the Olympic rings and other Olympic emblems). The law is clear that "protection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully." 17 U.S.C. § 103(a). This language does not expressly apply here, as the Olympic rings improperly used by Mr. Theotokatos are protected by a form of trademark, not copyright, and thus are not literally "material in which copyright subsists." Nevertheless, the Supreme Court has held that 36 U.S.C. § 380 granted the USOC "more than a normal trademark," *San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.,* 483 U.S. 522, 528, 107 S.Ct. 2971, 2976, 97 L.Ed.2d 427 (1987), and that the protection thus conferred "may exceed the traditional rights of a trademark owner in certain circumstances." *Id.* at 540, 107 S.Ct. at 2983. These statements, taken together with the Court's lengthy explanation of the broad interests Congress intended to protect in passing § 380, *see id.* at 537–38, 107 S.Ct. at 2981–82, provide substantial sup-

port for the argument that infringing the USOC's rights in the Olympic rings should be treated as equivalent to unlawfully using "material in which copyright subsists" under 17 U.S.C. § 103(a). *See also United States Olympic Comm. v. Intelicense Corp.,* 737 F.2d 263, 264 (2d Cir.1984) ("USOC's consent is a prerequisite to marketing the Olympic symbol in the United States").

Section 103(a) of the Copyright Act provides that a copyright in a derivative work "does not extend to any part of the work" in which preexisting protected material has been used without authorization. The Second Circuit and some other courts have interpreted this provision to mean that even when the author of derivative work uses an underlying copyright without the permission of its owner, the derivative work may be still be "entitled to protection for its original contributions absent some showing . . . that the unlawful use pervaded the entire work." *JBJ Fabrics, Inc. v. Brylane, Inc.,* 714 F.Supp. 107, 110 (S.D.N.Y.1989); *see also Eden Toys, Inc. v. Florelee Undergarment Co., Inc.,* 697 F.2d 27 (2d Cir.1982); *Pamfiloff v. Giant Records, Inc.* 794 F.Supp. 933, 938 (N.D.Cal.1992) ("if the preexisting . . . material used without permission 'tends to pervade the entire derivative work,' copyright protection is denied to the derivative work entirely") (quoting *Dynamic Solutions, Inc. v. Planning & Control, Inc.,* 646 F.Supp. 1329, 1340 (S.D.N.Y.1986)) (internal quotation marks omitted).[2]

Our visual review of Mr. Theotokatos' designs leads us to conclude that two elements—flags of Olympic host countries and the Olympic rings—are the dominant elements in the designs. Because their pres-

ence is roughly co-equal, it is difficult to determine whether the Olympic rings themselves "pervade" the works as a whole. We need not reach this difficult question, however, as we find that Mr. Theotokatos' amended complaint must be dismissed on other grounds.

## C. *Substantial Similarity*

■■■ Even if Mr. Theotokatos' copyrights are valid, he fails to state a cause of action because the exhibits to his amended complaint show that he cannot meet the second requirement of a copyright infringement claim, *i.e.,* "'copying of constituent elements of the work that are original.'" *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991). In the absence of direct evidence, "copying may be inferred where the defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work." *Atari,* 672 F.2d at 614; *Wildlife Express Corp. v. Carol Wright Sales, Inc.,* 18 F.3d 502, 508 (7th Cir.1994) (quoting *Atari* ). If the similarities between works are insufficient to prove copying, or if it is established that the accused work was independently created without copying, the plaintiff cannot prevail. *Wildlife Express,* 18 F.3d at 508.

■■■ Where, as here, both the protected and accused works are attached to the complaint, a court may compare the works and determine as a matter of law whether they are substantially similar with respect to copyrightable material. *See Cory Van Rijn, Inc. v. California Raisin Advisory Bd.,* 697 F.Supp. 1136, 1137 (E.D.Cal.1987); *see also*

---

**2.** The Seventh Circuit made statements in *Gracen* that appeared to reject the "pervades" standard in favor of a bright line rule that the author of a derivative work could not copyright her derivative work at all if she had not been authorized to use the underlying copyrighted materials. *See Gracen,* 698 F.2d at 302–03. These statements have been cited by two other courts. *See Gallery House, Inc. v. Yi,* 582 F.Supp. 1294, 1297 (N.D.Ill.1984) (where the author of a derivative work has used a copyrighted underlying work, he has "no right to claim copyright . . . unless specifically licensed to do so by the author of the underlying design"); *Fred Riley Home Bldg. Corp. v. Cosgrove,* 864 F.Supp. 1034, 1037

(D.Kan.1994) ("copyright claimant must have the consent of the holder of the copyright in the preexisting work for the creation of the derivative work," citing *Gracen* ). The statements appear to have been taken out of context, as *Gracen* was decided primarily on the basis that the lack of originality prevented the derivative work's author from claiming copyright; comments about the scope of the right to use an underlying work without permission were secondary to this holding, at best. Moreover, both of the cases citing *Gracen,* as well as *Gracen* itself, would have been decided the same way under the "pervades" standard.

*Wildlife Express,* 18 F.3d at 506 n. 1 (courts in this circuit may make "side by side" and "ocular" comparisons to determine whether works are substantially similar). " 'In making such a comparison the works themselves supersede and control any contrary allegations, conclusions or descriptions of the works as contained in the pleadings.' " *Cory Van Rijn,* 697 F.Supp. at 1138 (quoting 3 NIMMER ON COPYRIGHT § 12.10 (rev. ed.1985)). Motions to dismiss a copyright infringement claim may be granted where "any similarity between the two works is insubstantial." *Id.* at 1138–39 (quoting same passage of NIMMER).

In evaluating substantial similarity, a court applies the "ordinary observer" test, described in its classic formulation by Judge Learned Hand: whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir. 1960). This test focuses on whether the "accused work has captured the 'total concept and feel' of the copyrighted work." *Atari,* 672 F.2d at 614 (quoting *Roth Greeting Cards v. United Card Co.,* 429 F.2d 1106, 1110 (9th Cir.1970)).

It is axiomatic that copyright protection only covers "the expression of ideas, not the ideas themselves." *See FASA,* 912 F.Supp. at 1145; *see also* 17 U.S.C. § 102(b). Furthermore, the copyright protection afforded to a derivative work is limited to the "incremental originality" added to the work, and does not extend to the underlying preexisting works. *See Saturday Evening Post Co. v. Rumbleseat Press, Inc.,* 816 F.2d 1191, 1193 (7th Cir.1987). Thus, in order to prevail on a copyright infringement claim for a derivative work, the plaintiff must not only establish substantial similarity between the protected and accused works, but that the similarities derive from his protected expression of, or "incremental originality" added to, the underlying works. *See FASA,* 912 F.Supp. at 1147; *North Am. Bear Co., Inc. v. Carson Pirie Scott & Co.,* No. 91 C

4550, 1991 WL 259031, at *3 (N.D.Ill. Nov. 27, 1991) (courts should "analyze the two works to determine whether all similarities between the two works derive from the copying of unprotected expression"). "[T]his requires a sharper focus: the court must find a substantial similarity between the protectable elements of the two works. That is, the plaintiff must show that the defendant appropriated the plaintiff's particular means of expressing an idea, not merely that he expressed the same idea." *Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.,* 25 F.3d 119, 123 (2d Cir.1994).

The first step, of course, is to identify the protectable expression found in Mr. Theotokatos' designs. Mr. Theotokatos' copyrights do not protect his overall idea of arranging flags and Olympic symbols to commemorate the centennial Olympics, or even his idea of flags in a circle or in rows with Olympic symbols in the center, but only his specific expressions of these ideas. In addition, Mr. Theotokatos' use of these underlying works is only protected in the "incremental originality" he added in his designs. *See Saturday Evening Post,* 816 F.2d at 1193. Thus, the only protected work consists of his specific arrangement of the underlying works and his original design elements.

In comparing Mr. Theotokatos' designs with the accused designs, it is clear that the similarities between the two sets of designs are limited to nonprotectible elements of his designs.[3] Both Mr. Theotokatos' Circular Design and the accused Andazia Design contain flags of past Olympic host countries in a circular arrangement around a central group of symbols including the Olympic rings and torch. As none of these elements—flags, a circle shape, the Olympic rings or torch—are covered by Mr. Theotokatos' copyrights, the question is whether Andazia expressed these elements in a manner that is substantially similar to his. Andazia's expression is different from that of Mr. Theotokatos in a number of ways.

First, the circles of flags are themselves differently expressed. Andazia's design contains two semi-circles of horizontally-placed

---

**3.** To view the two copyrighted and the two ac-    cused designs, see the Appendix to this opinion.

flags, while Mr. Theotokatos' flags form one continuous circle. *See* the attached exhibits. Andazia also placed the year in which the country hosted the Summer Olympics on the outside of each flag, and did not include the name of the host country, while Mr. Theotokatos placed both the year and the name of the host country under each flag. Also, Andazia included the Greek flag for the 1896 Summer Olympic in one of its semi-circles and left it out for the 1906 Summer Olympics, while Mr. Theotokatos placed the Greek flag for 1896 in the center of his design, and also included it for 1906 in his circular design. For the 1980 Summer Olympics, Andazia used the Russian flag, while Mr. Theotokatos used the Soviet Union's flag. Therefore, although both designs share a common idea of placing flags of past host countries in a circular arrangement, the expressions of that idea differ.

The expressions of the designs within the circular area likewise differ in a number of important aspects. Both the Circular Design and the Andazia Design contain the Olympic torch, flames, and rings, and the number "100," but here too the parties' expressions of the common idea of commemorating the centennial Olympic are clearly different. Andazia's Olympic flames are in the shape of a spiral of stars coming out of a torch, an official trademark symbol owned and licensed to Sara Lee (and sublicensed to Andazia) by the Atlanta Committee for the Olympic Games. Mr. Theotokatos' design depicts the Olympic flames through a simple sketch that does not include any stars. In addition, Mr. Theotokatos placed his Olympic rings in the middle of the torch flames, with the number "100" above the rings, and the words "Year Anniversary," the flags of Greece and the United States, and the words "Athens, Greece 1896" and "Atlanta, U.S.A.1996" all placed within the rings. The torch itself is barely depicted. Andazia's design has the Olympic rings and the number "100" forming the base of a torch, and the words "Atlanta 1996" at the bottom of the torch (all of these are part of the official ACOG trademark), but does not have any words or flags placed in the Olympic rings. Thus, both the ring of flags and the central grouping of Olympic

symbols and words are executed quite differently in the two designs.

The overall effect of the two designs is also very different, largely because of the various elements that exist in only one of the designs. Andazia's central design is part of a large globe made up of the United States flag, an element not found in the Circular Design. Andazia's central design fills almost the entire circular space within the flags and is much more elaborate than Mr. Theotokatos' more simple design. Finally, the Andazia Design bears the writing "Olympic Summer Games" in large letters across the top of the design. Because of these differences, the Andazia Design creates a much different visual impact than the Circular Design.

There is an even more marked lack of substantial similarity between Mr. Theotokatos' Horizontal Design and the accused Pillar Design. While both designs place the flags of past host countries in rows, the actual arrangement of the flags is different. Most noticeably, the Horizontal Design's flags are placed in two horizontal rows, while the Pillar Design's flags are in two vertical rows. This variation alone creates significantly different visual effects. The year in which the country hosted the Olympics is placed underneath each flag in Mr. Theotokatos' design, while it is located to the side of each flag in the Pillar Design. Moreover, the overall concept and feel of the two designs are even more strikingly different than with the Circular Design and the Andazia Design. Mr. Theotokatos' central design is fairly simple, made up only of the Olympic rings, with the number "100" above the it, and the words "Year Anniversary," the flags of Greece and the United States and the words "Athens, Greece 1896" and "Atlanta, U.S.A.1996" in the rings. The Pillar Design, however, has a large Greek pillar in between the two vertical rows of flags and a large globe in the background. The words "USA" are placed in large, bold letters over the Olympic rings. The Pillar Design also has the words "The History" at the top of its design, with "1896," the Greek flag and "Athens" at the top end of the pillar and "1996," the United States flag, and "Atlanta" at the bottom end of the pillar. These significant differences create

entirely an different concept and feel for the two designs.

Mr. Theotokatos' designs and the accused designs only share similar ideas, while their expressions are different. The only similarities between the designs are insubstantial because they relate to nonprotectible elements of Mr. Theotokatos' designs, e.g., his idea of arranging flags of past host countries in simple shapes with a central design commemorating the centennial Olympics, and his use of the underlying preexisting works. Mr. Theotokatos' designs also have an entirely different concept and feel than the accused designs. Therefore, the court finds that the protectable elements of Mr. Theotokatos' designs are not substantially similar to the accused designs as a matter of law. Both because there is no substantial similarity and because Mr. Theotokatos' copyrights in his designs are invalid, the court grants Andazia's motion to dismiss Mr. Theotokatos' amended complaint against Sara Lee for copyright infringement.

### The Third–Party Indemnity Claim

In its motion to dismiss, Andazia also sought the dismissal of Sara Lee's third-party complaint against it, reasoning that if there was no longer any underlying claim, Sara Lee could have no cause of action for indemnity against it. As the pleadings associated with Sara Lee's motion for summary judgment have made clear, however, the validity of the indemnity claim does not depend on the continued existence of the underlying claim. We thus deny Andazia's motion to dismiss insofar as it seeks the dismissal of the third-party complaint.

### II. Sara Lee's Motion for Summary Judgment

Sara Lee has filed its own motion for summary judgment against Andazia on its contractual indemnification claim. Andazia argues that Sara Lee's motion for summary judgment should be denied to permit it to conduct discovery and develop its defenses against the claim. In support of this argument, Andazia has filed an affidavit and memorandum outlining its proposed defenses and the discovery required. This Court has not conducted a full-scale investigation of Andazia's proposed defenses. We find, however, that at least one defense is potentially valid and deserving of additional discovery under Fed. R. Civ. P 56(f).

Federal Rule of Civil Procedure 56(f) allows a party to obtain additional discovery before a summary judgment ruling under certain circumstances. A party invoking Federal Rule 56(f) "must do so in good faith by affirmatively demonstrating why he cannot respond to a movant's affidavits ... and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Korf v. Ball State Univ.*, 726 F.2d 1222, 1230 (7th Cir.1984) (quoting *Willmar Poultry Co. v. Morton–Norwich Prods., Inc.*, 520 F.2d 289, 297 (8th Cir.1975)). The party opposing summary judgment must make his request for additional discovery in the form of an affidavit and show that additional relevant evidence exists. FED. R. CIV. P. 56(f); *Ford v. Roth*, No. 91 C 4907, 1993 WL 96526, at *2 (N.D.Ill. March 31, 1993). Specific assertions which could produce a genuine issue of material fact, not mere speculation, are required. *United States v. On Leong Chinese Merchants Ass'n Bldg.*, 918 F.2d 1289, 1295 (7th Cir.1990); *Ford*, 1993 WL 96526, at *2. The party must also show that he has not been dilatory in pursuing discovery. *United States v. Bob Stofer Oldsmobile–Cadillac, Inc.*, 766 F.2d 1147, 1152–53 (7th Cir.1985). Several factors are relevant in determining whether a party has been dilatory: "1) the length of the pendency of the case prior to the Rule 56(f) request; 2) whether and when plaintiff could have anticipated its need for the requested discovery; 3) the previous efforts, if any, made by plaintiff to obtain the needed information either through Rule discovery or otherwise; 4) the degree and nature of discovery already undertaken; 5) any limitations placed upon discovery previously by the trial court; 6) any prior solicitations of or provisions for discovery by the trial court; 7) any warning which plaintiff might have had that, absent a speedier request, discovery might be denied and his claim dismissed; and 8) whether the requested information was inaccessible to plaintiff." *Paul*

*Kadair, Inc. v. Sony Corp.*, 694 F.2d 1017, 1031 (5th Cir.1983).

■ Although Andazia did not file a formal separate motion pursuant to Rule 56(f), it requested additional discovery in its memorandum in opposition to Sara Lee's motion for summary judgment, and attached a supporting affidavit from its attorney. Andazia outlined several possible defenses to Sara Lee's claim for indemnification and specified the type of information needed from discovery to support them. Thus, Andazia provided a sufficiently detailed request for discovery even though it was not made in a separate motion. *See Pfeil v. Rogers*, 757 F.2d 850, 856 (7th Cir. 1985) ("A court may disregard a failure to formally comply with Rule 56(f) if the ... request for a continuance clearly sets out the justification for the continuance"); cf *Demitropoulos v. Bank One Milwaukee, N.A.*, 953 F.Supp. 974, 986 n. 18 (N.D.Ill. 1997) (Rule 56(f) discovery denied where request made in footnote without affidavit describing materials sought).

■ In its request, Andazia specified evidence that could be obtained through discovery which would produce a potentially valid defense against Sara Lee's indemnification claim. Andazia points to indications that Mr. Theotokatos asserted a claim against Sara Lee prior to filing his July 1996 complaint, and seeks to conduct discovery to determine exactly when he made his first claim. It is possible, Andazia argues, that Sara Lee breached the indemnification provision's notice requirement by failing to notify Andazia of an earlier claim, thus prejudicing Andazia's ability to immediately settle or defend the claim on its own. Although we of course do not rule on the validity of this defense at this point, preliminary research indicates that Andazia's argument may raise a legally viable defense. *See Sersted v. American Can Co.*, 535 F.Supp. 1072, 1076 (E.D.Wis. 1982) (notice requirement of an indemnification provision in sales contract is material: it allows settlement between the parties and minimizes possibility of prejudice to indemnitor by giving him the opportunity to investigate and take action to properly defend himself); *Great Am. Ins. Co. v. C.G. Tate Constr.*

*Co.*, 303 N.C. 387, 279 S.E.2d 769, 775 (1981) (clear purpose and importance of notice provisions in insurance contracts is to protect insurer's ability to defend itself; where a delay in notice by insured prejudices insurer's ability to defend itself, insurer is released from liability). Thus, Andazia has identified at least one potential defense that merits additional discovery.

In response, Sara Lee argues that this defense does not raise a genuine issue of material fact because it involves only speculation about a hypothetical breach. However, Andazia avers that its specific assertions regarding Sara Lee's possible breach of the notice provision are based on two letters in its possession. Sara Lee also protests that Andazia has been dilatory in failing to serve discovery on Sara Lee. We do not believe that this argument is supported by the record to date. Sara Lee's third-party complaint against Andazia was filed only three months before Andazia's Rule 56(f) request. *Cf. Paul Kadair, Inc.*, 694 F.2d at 1031–32 (one year delay in pursuing discovery was dilatory); *Colby v. J.C. Penney Co.*, 926 F.2d 645, 648 (7th Cir.1991) (nine years sufficient time to conduct discovery needed to oppose summary judgment). In addition, Andazia has provided a reasonable explanation for its decision not to commence discovery proceedings: it is waiting for a ruling from us on its motion to dismiss before beginning discovery. If the court grants Andazia's motion (as indeed it has), the nature of the entire lawsuit is likely to change significantly, as there will no longer be an underlying copyright infringement claim against Sara Lee. It was reasonable for Andazia to wait for the court's decision before embarking on costly discovery proceedings when its case against Sara Lee was subject to considerable change. Moreover, it is difficult to characterize Andazia's actions in these proceedings as dilatory, as it reacted expediently to Sara Lee's third party complaint by filing its motion to dismiss shortly afterwards. Thus, Andazia has not been dilatory in declining to commence discovery against Sara Lee.

Because discovery may allow Andazia to produce a valid defense against Sara Lee's indemnification claim, Sara Lee's motion for

summary judgment is denied without prejudice and Andazia is granted leave to take discovery.

## CONCLUSION

The court grants in part and denies in part third-party defendant Andazia's motion to dismiss [16–1]. The motion is granted to the extent that the plaintiff's amended complaint against Sara Lee is dismissed with prejudice; it is denied in all other respects. The court denies the motion of defendant/third-party plaintiff Sara Lee Personal Products for summary judgment [23–1] without prejudice to its renewal at a later date. The parties to the sole claim remaining in this lawsuit, Sara Lee's indemnity claim against Andazia, shall appear on July 23, 1997 at 9:00 a.m. for a status hearing to discuss the future direction of this case.

APPENDIX

(c)1994 Angelos Theotokatos

Circular Design  [(c) Theotokatos]

# Olympic Summer Games

Andazia Design

348

© 1994 Angelos Theotokatos

Horizontal Design [(c) Theotokatos]

Pillar Design