Ferdinand **PICKETT**, Plaintiff,

v.

**PRINCE**, Defendant.

No. 94 C 4740.

United States District Court,
N.D. Illinois,
Eastern Division.

June 18, 1999.

---

Alan L. Barry, Wallenstein, Wagner & Hattis, Ltd., Chicago, IL, John J. Lowrey, Lowrey & Smerz, Ltd., Chicago, IL, Byron L. Mason, Turner, Latz & Olmstead, Chicago, IL, Ferdinand Pickett, Chicago, IL, Harvey L. Walner & Associates, Matthew Joseph Gryzlo, Wallenstein & Wagner, Ltd., Chicago, IL, David Graydon Trout, Reda & Associates, P.C., Chicago, IL, for Ferdinand Pickett, Guitar maker and designer, plaintiff.

Steven Francis Molo, Gerald C. Peterson, Marie A. Lona, Adrienne Banks Pitts, Winston & Strawn, Chicago, IL, Monica Petraglia McCabe, Michael S. Elkin, Reid & Priest, LLP, New York, City, for Prince, defendant.

Gerald C. Peterson, Adrienne Banks Pitts, Winston & Strawn, Chicago, IL, Michael S. Elkin, Reid & Priest, LLP, New York, City, for Prince, counter-claimant.

Alan L. Barry, Wallenstein, Wagner & Hattis, Ltd., Chicago, IL, John J. Lowrey, Lowrey & Smerz, Ltd., Chicago, IL, Ferdinand Pickett, Chicago, IL, David Graydon Trout, Reda & Associates, P.C. Chicago, IL, for Ferdinand Pickett, counter-defendant.

Ferdinand Pickett, Chicago, IL, plaintiff pro se.

## MEMORANDUM OPINION AND ORDER

PALLMEYER, District Judge.

In a case that has spanned five years, two judges, numerous counsel, and lengthy discovery proceedings; has spawned multiple motions and published orders; and has at last teetered to the brink of trial, the parties debate over the use of the Symbol that has come to identify Defendant,[1] the Artist formerly known as Prince. Indeed, Defendant may as well have had this pro-

---

1. Defendant's law firm was able to program the actual symbol into their computers, result-

tracted litigation in mind when he lyrically asked: "Why do we scream at each other. This is what it sounds like. When doves cry." [2]

Plaintiff filed this suit against Defendant in 1994, alleging infringement of Plaintiff's copyright in a Symbol-shaped guitar (the "Symbol-guitar") that Plaintiff allegedly designed. Because it is undisputed that Defendant designed the Symbol itself, the central issue for the court is whether Plaintiff has an enforceable copyright in the Symbol-guitar as a derivative work. Although both parties recognize the derivative work issue as dispositive, Plaintiff contends that Defendant is barred from raising it by an earlier decision made by Judge Shadur. In July 1997, Defendant brought counterclaims for copyright infringement against Plaintiff. Judge Shadur dismissed those counterclaims on December 18, 1997 on the grounds that the statute of limitations had expired. *See Pickett v. Prince*, No. 94 C 4740, 1997 WL 790599 (N.D.Ill. Dec. 18, 1997). Defendant moved the court for reconsideration, which was denied by Judge Shadur on May 7, 1998. *See Pickett v. Prince*, 5 F.Supp.2d 595 (N.D.Ill.1998). When the validity of Plaintiff's copyright was raised in the parties' pre-trial materials on March 15, 1999, this court invited a motion for summary judgment. The matter is now fully briefed. For the reasons discussed below, the court grants the motion and dismisses the case.

### FACTUAL BACKGROUND

The facts relevant to this motion are largely undisputed.[3] Defendant is a well-known recording artist, performer, and songwriter of popular music.[4] Around 1990, Defendant created and began using a symbol (the "First Symbol") based solely on the male and female signs.[5] The First Symbol appeared on the cover of the "Graffiti Bridge" album, which was released on August 21, 1990. (Def.Aff. ¶ 2, Ex. A to Defendant's Memorandum of Law in Support of Summary Judgment Submitted Pursuant to the Court's March 15, 1999 Request (hereinafter "Def. Motion").) Shortly thereafter, Defendant hired Elisabeth Schoening, a freelance artist, to embellish the symbol (the "Embellished Symbol" or "Symbol") for the release of a single entitled "7" by combining the First Symbol with a drawing of the number "7" (reproduced at the end of this opinion as Figure 1). (*Id.* ¶ 4; Schoening Aff. ¶¶ 3–4, Ex. C to Def. Motion.) The Symbol was included on Defendant's "Androgynous" album, which was released on October 13, 1992. (Def.Aff.¶ 5.) In December 1992, Defendant adopted the Symbol as his name.[6]

ing in court filings that use the Symbol to refer to him. The court's technical resources are unfortunately more limited. Rather than refer to the Artist as "Nelson," as Judge Shadur did, this court will call him simply "Defendant."

**2.** All lyrics used in the opinion were transcribed by the Prince Lyric Transcription Team and were found at *http://members.aol.com/WhosPrince/lyrics/purple.html*.

**3.** Because the motion was specially requested by the court, the parties have not submitted the normally requisite Rule 12(M) and 12(N) statements of undisputed facts. The court therefore gleans the facts from the statement of facts in the briefs and additional documents submitted thereto.

**4.** Defendant's popularity is evidenced by various publications and fan clubs devoted to him. One such magazine is *Uptown*, an "independent and uncensored magazine exploring the world of the Artist formerly known as Prince." *http://www. uptown.se/99/uptown/html.* Another is prince.org, an unauthorized, unofficial, independent fansite that includes, among other things, the latest news about Defendant, events, and links to other fan associations around the world. *See http://www. prince.org./main/html.*

**5.** Defendant's fans were perhaps not surprised by Defendant's eventual adoption of this symbol, with its prototype combining the male and female signs. For example, the then-Prince wrote in his 1984 "I Would Die 4 U": "I'm not a woman. I'm not a man. I am something that you'll never understand."

**6.** The record does not disclose whether the name change was accomplished through legal proceedings or informal adoption.

It is fair to say that the Symbol is recognized throughout the United States and around the world as designating Defendant. Defendant has incorporated the Symbol into a variety of items he uses in performance, ranging from his clothing, jewelry, stage props, and musical instruments. Notably, Kenneth Yould, an industrial art designer, designed a musical percussion instrument for Paisley Park Enterprises, Inc., Defendant's company, back in 1991. (Yould Dep., at 9–12, Ex. H to Def. Motion.) The instrument, called a Tamboracca, was a hexagon-shaped instrument that integrated the First Symbol into its design (reproduced at the end of this opinion as Figure 2). (*Id.*) In the latter part of 1991, Mr. Yould also designed a guitar in the shape of the First Symbol. (*Id.* at 25.) This design was later modified in late 1992 to include the Embellished Symbol. (*Id.* at 36.) Apparently, Mr. Yould did not register copyrights in the two musical instruments.[7] Defendant did not obtain a copyright in the Symbol itself until June 27, 1997. (*See* Copyright Registration, Ex. F to Def. Motion.)

Plaintiff is a well-known guitar maker and self-proclaimed fan of Defendant. As an expression of his admiration for Defendant, Plaintiff created a guitar in the shape of the Symbol sometime in 1993 (reproduced at the end of this opinion as Figure 3), with hopes that he would be able to sell it to Defendant, thereby enhancing his own reputation as a guitar maker. *Pickett,* 1997 WL 790599, at *2. Plaintiff claims that he showed the guitar to Defendant in 1993, but Defendant denies that he ever encountered either Plaintiff or the Symbol-guitar. While the parties dispute whether such a meeting ever took place, it is uncon-tested that Defendant did not purchase Plaintiff's Symbol-guitar. Plaintiff's disappointment must have turned to indignant rage when he later learned that Defendant was actually performing on tour during April 1993 with a Symbol-shaped guitar. Plaintiff filed his original, *pro se* complaint claiming fraud and consumer fraud on May 24, 1994, and in his Second Amended Complaint on September 10, 1996, he alleged copyright infringement of his rights in the guitar. He does not claim to own a copyright in the Symbol itself.

It is undisputed that Plaintiff had seen the Symbol on Defendant's album covers before he conceived of the idea to design the Symbol-shaped guitar. (Pickett Dep., at 42–43, Ex. E to Def. Motion.) His copyright applications with the U.S. Copyright Office for the guitar are consistent with that fact. On August 27, 1996, Plaintiff filed a copyright application, which described the guitar as a three-dimensional sculptural work. (Guitar Copyright Registration, Ex. M to Def. Motion.) In a Supplementary Registration filed on February 3, 1999, he amplified the copyright to identify the guitar as based on or incorporating elements of the pre-existing "two-dimensional graphic symbol of Prince Rogers Nelson." (*Id.*) In other words, the guitar is a derivative work based on and incorporating Defendant's now copyrighted Symbol.[8] It is also undisputed that he never received permission from Defendant to use the Symbol in his work. Defendant urges that Plaintiff's failure to do so renders his own copyright invalid.

Plaintiff challenges this interpretation of the law and contends that even if Defendant's interpretation is correct, the law of

**7.** Neither party devotes much attention to the fact that Mr. Yould created a guitar using Defendant's First Symbol back in 1991. (*See* Yould Dep., at 25.) Considering that copyright inheres in authorship and not registration, *see infra* note 8, if Mr. Yould first registered his copyright, Plaintiff's Symbol-guitar itself would arguably be subject to an action for copyright infringement. *See* 17 U.S.C. §§ 411(a), 501(b).

**8.** That Defendant had not yet registered his copyright when Plaintiff registered his Symbol-guitar is irrelevant. Under the Copyright Act, "registration is not a condition of copyright protection." 17 U.S.C. § 408(a). Rather, "[c]opyright inheres in authorship and exists whether or not the work is ever registered." *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.,* 29 F.3d 1529, 1531 (11th Cir.1994).

this case bars Defendant from making this argument. Specifically, Plaintiff points to counterclaims that Defendant filed on July 7, 1997 for copyright infringement against Plaintiff. The counterclaims alleged that Plaintiff violated Defendant's exclusive right "to reproduce the copyrighted work" and "to prepare derivative works based upon" the Symbol. *See* 17 U.S.C. §§ 106(1)–(2). Defendant claimed that "Plaintiff's Guitar and Plaintiff's designs for his Guitar are unauthorized derivative works" and that "Plaintiff's copyright registration for Plaintiff's Guitar does not grant Plaintiff a copyright in said Guitar because Plaintiff did not have the Artist's permission to create Plaintiff's Guitar as a derivative work from the Artist's copyrighted Embellished Symbol." (Def. Amended Answer to Pl. Second Amended Counterclaim ¶¶ 13, 28.)

Judge Shadur found that the statute of limitations had run, making the counterclaims stale and unenforceable. *See Pickett*, 1997 WL 790599, at *6. Under Judge Shadur's calculations, which relied on the three-year statute of limitations in the Copyright Act, 17 U.S.C. § 507(b), any counterclaims of copyright infringement had to be asserted by July 5, 1997 since the complaint had been served on July 5, 1994. *Id.* at *2. Defendant, however, first tendered his counterclaims to the court on July 7, 1997. After dismissal of the counterclaims, Defendant moved for reconsideration on the grounds that Judge Shadur had miscalculated the last filing date. Defendant agreed that the statute of limitations on Defendant's counterclaims lapsed on July 5, 1997, but pointed out that July 5, 1997 was a Saturday. Under Rule 6(a), Defendant argued, he had until the next court business day, Monday, July 7, 1997, to file his counterclaims. *See* FED.R.CIV.P. 6(a). Although Judge Shadur indicated that Defendant's calculation was correct, he ultimately concluded that the "argument fails as a matter of law because it simply comes too late." *Pickett*, 5 F.Supp.2d at 596. Judge Shadur indicated that the right time to have advocated the present contention was when Plaintiff's

motion for summary judgment on the counterclaims was fully briefed and submitted to the court, and not after the ruling had been made. *Id.* Failure to raise the argument earlier therefore constituted a forfeiture of that argument. *Id.*

The case was reassigned to this court in October 1998, and the court set a March 22, 1999 trial date. On March 15, 1999, the parties appeared before the court for a final pretrial conference. In his final pretrial submissions, Defendant challenged the validity of Plaintiff's copyright on the ground that Plaintiff did not have authorization to incorporate the Symbol into his derivative work. Recognizing the issue as a question of law, the court requested that the parties brief the following issues: (1) whether Plaintiff's copyright infringement claim fails as a matter of law because his derivative work relied on unauthorized use of the Symbol, and (2) whether Judge Shadur's dismissal of the counterclaims as time-barred precludes Defendant from raising the issue of validity as a defense. The court discusses the procedural question first because if Plaintiff is correct that Defendant is barred from raising the validity defense, the court need not reach that issue.

## DISCUSSION

### I. Summary Judgment Standard

The court may invite the appropriate party to move under Rule 56 when it thinks the case is ripe for summary disposition, as happened here. *See* 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE: Civil 3d § 2720 (1998). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). In ruling on a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in the nonmov-

ant's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party that bears the burden of proof on a particular issue at trial may not rest on the pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Here, both parties agree that the dispositive issue for purposes of the motion is one of law: the validity of Plaintiff's copyright. Before reaching that issue, the court first addresses the effect of Judge Shadur's dismissal of Defendant's counterclaims.

## II. Dismissal of Counterclaims

■ Plaintiff contends that Defendant lost his right to challenge the validity of Plaintiff's derivative work because Judge Shadur dismissed his counterclaims. Defendant counters that while Defendant may have lost a remedy against Plaintiff, he did not lose the right to argue that Plaintiff has no remedy against him because his copyright is invalid and unenforceable.

Though both parties' briefs reflect careful research, neither party has located case law that addresses the issue squarely. That is, none of the cases cited by the parties (nor any located by the court) present a situation where a defendant's counterclaims were dismissed as time-barred and the defendant later tried to raise the issue at the heart of the counterclaims as a defense to the plaintiff's claims.

■ To the extent that Plaintiff argues that the law of the case doctrine prevents this court from now allowing Defendant to go forward with making counterclaims alleging copyright infringement, the court agrees. The law of the case doctrine, as most commonly defined, "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (quot-

ing *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)); *see also Avitia v. Metropolitan Club of Chicago, Inc.,* 49 F.3d 1219, 1227 (7th Cir. 1995). The Seventh Circuit has held that a variant of the doctrine applies in the present situation, where a case was reassigned from one judge to another in the same court. *Best v. Shell Oil Co.,* 107 F.3d 544, 546 (7th Cir.1997). Arriving at that conclusion, however, does not get this matter much closer to resolution-Defendant is not trying to revive his dismissed counterclaims, and the court would not entertain such an effort.

What is not so clear is whether the dismissal of the counterclaims means that Defendant has forfeited his ability to assert that Plaintiff unlawfully created his guitar, even by way of defense, as Plaintiff contends. After reviewing the case law and statutory language and employing common sense, the court respectfully rejects Plaintiff's estoppel argument.

■ Analysis begins with the Copyright Act. Section 106 of that Act sets forth six exclusive rights of copyright (the "bundle of rights") enjoyed by the copyright holder, including the right to: (1) reproduce the copyrighted work, (2) prepare derivative works based upon the copyrighted work, (3) distribute copies of the copyrighted work, (4) publicly perform the copyrighted work, (5) display the copyrighted work, and (6) in the case of sound recordings, perform such by means of a digital audio transmission. 17 U.S.C. § 106. Anyone who violates any of the exclusive rights of the copyright owner by unlawfully using or unlawfully authorizing the use of the protected work is an infringer. *Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417, 432, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984). Defendant's earlier counterclaims were based on his exclusive right to "reproduce the copyrighted work" (the Symbol) and to "prepare derivative works based upon the copyrighted work." According to Plaintiff, once Defendant's counterclaims were dismissed, he could no

longer assert those rights against Plaintiff in any manner, whether by way of an infringement claim or as a defense to Plaintiff's claims. In other words, "[a]bsent the ability to sue a particular infringer for a specific act of copyright infringement, a copyright owner's bundle of rights ... is lost against that particular infringer." (Mr. Pickett's Memorandum in Support of Copyright Validity (hereinafter "Pl. Memo"), at 11.)

In Plaintiff's view, section 103 of the Copyright Act supports his position. Under section 103, a derivative work is separately and independently copyrightable and is entitled to independent copyright protection, even as against the creator of the original work. 17 U.S.C. § 103(a). Protection for the derivative work extends only to the new material contributed by its author. 17 U.S.C. § 103(b). Plaintiff argues that section 103 does not recognize any defenses to a claim of infringement of the derivative work by the creator of the original, and "Defendant cannot resurrect his lost [section] 106 rights in a [section] 103 setting." (Pl. Memo, at 11.) Plaintiff thus submits that Defendant may contest the scope of Plaintiff's derivative work under section 103, but may not raise the issue of invalidity or lack of authorization of the derivative work.

The court is not persuaded that dismissal of Defendant's counterclaims on timeliness grounds means that Defendant may not raise a defense based on facts that were central to his counterclaims. The Supreme Court has recognized that statutes of limitation "are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim. . . ." *Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945). Though only a "working hypothesis," the Court has articulated that as a matter of constitutional law, statutes of limitations "go to matters of remedy, not to destruction of fundamental rights." *Id.* Likewise, the Seventh Circuit has interpreted Supreme Court holdings that Congress and the states have the power to expand statutes of limitations retroactively, as happened in *Chase Securities,* to imply that "limitations periods are not generally to be viewed as affecting substantive rights." *Banas v. American Airlines,* 969 F.2d 477, 485 (7th Cir.1992) (citing *Campbell v. Holt,* 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885); *Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945); *International Union of Elec., Radio & Machine Workers Local 790 v. Robbins & Myers, Inc.,* 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976)).[9]

Relying on the Supreme Court's language in *Chase,* Defendant argues that the passage of time, which may prevent Defendant from asserting a legal claim and seeking remedies against Plaintiff, does not convert Plaintiff's unlawful use of a copyright to a lawful one. The court agrees. Nothing in the case law definitively holds that a time-barred cause of action destroys the right to raise the facts central to that action as a defense, where the defending party does not seek any affirmative remedy. Neither could an adverse ruling due to an expired statute of limitations excuse Plaintiff from proving essential elements of

---

**9.** The determination of whether an action is time-barred and the effects of such a decision involves an area of law that "has precipitated more ambiguity and caused more theoretical and practical snarls" than any other area of law. *Reinke v. Boden,* 45 F.3d 166, 169 (7th Cir.1995). It remains unsettled whether statutes of limitations extinguish the claim and destroy the right itself or whether they do no more than cut off resort to the courts for enforcement of a claim. *See Chase,* 325 U.S. at 313, 65 S.Ct. 1137 (noting the debate, but not settling those arguments). Likewise, it is unclear how to distinguish between those statutes of limitations whose expiration results in a "procedural" decision versus those that amount to a decision "on the merits." *See Reinke,* 45 F.3d at 169–170 (indicating the two categories, but not explaining how to determine which category applies to which statute of limitations). The parties do not discuss the ambiguities in this area, and the court accordingly does not focus its discussion on delineating the impact of rulings based on expired statutes of limitations.

his claim (i.e., that he had a valid copyright), as will be discussed further below. The court does not find any support for Plaintiff's contentions outside the area of copyright law, either. For example, a criminal defendant whose section 1983 claim for an unlawful search becomes time-barred does not lose his right to allege a Fourth Amendment violation as a defense in his later trial. Nor would the fact that the statute of limitations had expired on a trespass claim bar a landowner from raising an injured party's unauthorized entry on land as a defense to a tort claim.

The court additionally rejects Plaintiff's contention that the issues of invalidity and authorization have been decided in a previous stage of the lawsuit. Judge Shadur never addressed the merits of the counterclaims; he dismissed those claims only because the statute of limitations had expired. Whether such a decision is deemed "on the merits" or "procedural" does not affect the fact that Judge Shadur never resolved the substantive merit of Defendant's counterclaims that Plaintiff's creation of a derivative work violated Defendant's own copyright. The only issue that was decided at that earlier stage of the lawsuit was whether the statute of limitations had expired on the counterclaims.

Moreover, accepting Plaintiff's "bundle of rights" argument would lead to an anomalous result. Defendant points out that Plaintiff's complaint challenges Defendant's use of a guitar that resembles Plaintiff's because that guitar, like Plaintiff's, derives from the Symbol. Thus, as described by Defendant, Plaintiff's theory appears to be that merely because Defendant did not bring suit against him promptly, Plaintiff "inherits all the exclusive rights, including the right to sell his guitar depicting Defendant's copyrighted Symbol and the exclusive right to prepare derivative works based on the Symbol-shaped guitar." (Defendant's Reply in Support of His Motion for Summary Judgment (hereinafter "Def. Reply"), at 15.) The court agrees with that characterization of Plaintiff's position and also finds it untenable. If Plaintiff's argument is accepted, Defen-

dant has basically waived his exclusive right to prepare derivative works based on his copyrighted work, and Plaintiff himself now has the exclusive right to prepare derivative works based on a Symbol-shaped guitar. To this court's knowledge, no court has ever found that to be so, and nothing in the language of the Copyright Act suggests, much less requires, this result. The court therefore finds that Judge Shadur's dismissal of Defendant's counterclaims in December 1997 does not prevent Defendant from now raising that issue as a defense.

### III. Copyright Protection for Plaintiff's Derivative Work

Having determined that the court may entertain Defendant's defense to the copyright infringement claim, the court turns to the more complicated issue of whether that defense defeats Plaintiff's claim as a matter of law. The parties do not dispute the facts surrounding the issue: They agree that Plaintiff's Symbol-guitar is a derivative work of Defendant's copyrighted Symbol; they agree that Plaintiff did not receive authorization from Defendant to use the Symbol; they agree that Defendant has been using another guitar that also incorporates the Symbol. The only point of dissension for the purposes of this motion is whether Plaintiff has a viable copyright infringement claim in such circumstances. Defendant contends that Plaintiff cannot put forth a prima facie case for copyright infringement because he did not have a valid copyright, which would have required permission from Defendant to use the Symbol. Plaintiff, on the other hand, argues for infringement on the theory that he holds a valid copyright for the derivative work, the Symbol-guitar, even without Defendant's authorization.

#### A. Prima Facie Case for Copyright Infringement

To establish a prima facie of copyright infringement, a plaintiff must prove two essential elements: (1) owner-

ship of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Tel. Serv.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). The registration of a copyright certificate creates a prima facie presumption of validity of a copyright. *See* 17 U.S.C. § 410(c). That presumption, however, is rebutted by evidence that disputes or rebuts the plaintiff's prima facie case. *See Mid America Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir.1995). Therefore, Plaintiff's copyright registration will not be sufficient to demonstrate a valid copyright in light of contrary evidence.

Plaintiff does not dispute that his Symbol-guitar is a derivative work based on the copyrighted Symbol,[10] (*see, e.g.,* Pl. Memo, at 1) but that does not necessarily deprive his creation of copyright protection. Section 103(a) of the Copyright Act explicitly provides that the subject matter of copyright, as specified by Section 102, includes "derivative works." 17 U.S.C. § 103(a). The court accordingly examines whether Plaintiff has an enforceable copyright in his Symbol-guitar.

**B. Unauthorized Use**

The exclusive right to prepare derivative works based on copyrighted material is as significant as the exclusive right to reproduce the copyrighted material. *See Atari, Inc. v. North Am. Philips Consumer Elec. Corp.*, 672 F.2d 607, 618 n. 12 (7th Cir. 1982) (the author's exclusive right to produce derivative works based on the original work "often can be more valuable than the right to the original work itself"). Defendant urges that in order to enjoy a copyright in his derivative work, Plaintiff must have received authorization from Defendant, the owner of the original copyrighted work upon which the derivative

work was based. Plaintiff implicitly acknowledges that under this bright-line authorization standard for which Defendant argues, his copyright is invalid. Plaintiff contends, however, that courts have not adopted this bright-line standard for determining the validity of a copyright for a derivative work. In Plaintiff's view, his copyright is valid even without authorization from Defendant because Defendant's Symbol does not "pervade" Plaintiff's Symbol-guitar. Plaintiff's copyright, he maintains, is limited by section 103(a) to only those parts of his work that do not employ Defendant's Symbol. Whether the bright-line authorization standard or the more fact-based "pervades" standard controls is the central issue for the court. The statutory text is somewhat ambiguous, and the authorities contradictory as to which approach is appropriate. The court discusses the most pertinent cases here.

**1. *Gracen*'s Bright–Line Authorization Standard**

Defendant relies heavily on language from *Gracen v. Bradford Exchange*, 698 F.2d 300 (7th Cir.1983). In *Gracen*, the Seventh Circuit examined 17 U.S.C. § 106(2) to determine whether an artist had a valid copyright in derivative paintings and drawings based on the movie "The Wizard of Oz." The court affirmed the district court's grant of summary judgment on the grounds that the painting lacked sufficient originality to be copyrightable. *Id.* at 305. In *dicta*, the court discussed whether the preparer of the derivative works (in that case, the plaintiff) had the authority to use the underlying copyrighted movie. *Id.* at 302. According to the court, "[s]ince the copyright owner's bundle of exclusive rights includes the right "to prepare derivative works based

---

10. According to the Copyright Act:
 A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgement, condensation, or any other

form in which a work may be recast, transformed, or adapted. A work consisting editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."
17 U.S.C. § 101.

on the copyrighted work,' 17 U.S.C. § 106(2), even if Miss Gracen's paintings had enough originality to be copyrightable as derivative works she could not copyright them unless she had authority to use copyrighted materials from the movie." *Id.*[11]

### 2. Plaintiff's "Pervades" Standard

Plaintiff emphasizes that this reference to authority for creation of a derivative work is *dicta*. He instead urges the court to adopt what he calls the "pervades" standard. Unfortunately, Plaintiff never articulates exactly what this standard consists of, resulting in some confusion on the part of both the Defendant and the court. The court understands Plaintiff's position on the copyrightability of derivative works to be as follows:

> Copyright protection is available under section 103(a) for parts of the derivative work that do not employ the preexisting work regardless of whether permission was first obtained. Copyright protection is defined by section 103(a) independently of any authorization by the copyright owner.

(Mr. Pickett's Response to Defendant's Memorandum of Law in Support of Summary Judgment Submitted Pursuant to the Court's March 15, 1999 Request (hereinafter "Pl.Resp."), at 6.) Plaintiff does not cite to any courts that adhere to this "pervades" approach, which incidently does not even use the word "pervades." Rather, he relies on his interpretation of the statutory language and legislative history of section 103(a) to support the proposition that unauthorized derivative works are valid copyrightable works.

Section 103(a) covers copyright protection for derivative works and provides in pertinent part that "protection for a work employing preexisting material in which copyright subsists does not extend to any part of a work in which such material has been used unlawfully." 17 U.S.C. § 103(a). According to Plaintiff, this language establishes that Congress contemplated that some infringing derivative works would still receive copyright protection, but only covering those "original" parts not employing the pre-existing material. Plaintiff also relies on the legislative history to show that valid derivative works could be made that use a pre-existing copyrighted work without authorization. The House Report on section 103 explains:

> The second part of the sentence that makes up section 103(a) deals with the status of a . . . derivative work unlawfully employing preexisting copyrighted material. In providing that copyright protection does not extend to "any part of the work in which such material has been used unlawfully," the bill prevents an infringer from benefitting, through copyright protection, from committing an unlawful act, but preserves protection for those parts of the work that do not employ the preexisting work.

H.R.Rep. No. 94–1476, at 57 (1976).

Plaintiff reads three expressions of Congress's intent here. First, Congress maintained that an individual unlawfully using pre-existing copyrighted matter in a derivative work could not be shielded from a copyright infringement suit by the owner of the pre-existing work. Second, Congress would not extend copyright protection to parts of the work using pre-existing material unlawfully. Finally, Congress preserved protection for those parts of the

---

**11.** Other courts have followed *Gracen* in holding that the preparer of a derivative work can obtain a valid copyright only if certain conditions are met. *See, e.g., Fred Riley Home Building Corp. v. Cosgrove*, 864 F.Supp. 1034, 1037 (D.Kan.1994) ("the copyright claimant of the derivative work must have the consent of the holder of the copyright in the pre-existing work for the creation of the derivative work.") (citing *Gracen*); *Gallery House,*

*Inc. v. Yi*, 582 F.Supp. 1294, 1297 (N.D.Ill. 1984) ("It is well settled that where a subsequent work is 'derived' from an underlying design, that maker has no right to claim copyright (1) unless specifically licensed to do so by the author of the underlying design, and (2) unless the alleged derivative work comprises an original artistic addition to the underlying design.") (citing *Gracen* ).

derivative work "that do not employ the pre-existing work" irrespective of unlawful use. (*See* Pl. Memo, at 2–3.) Plaintiff concludes from these principles that copyright protection will extend to any part of the derivative work that is not "pervaded" by the pre-existing copyrighted material, whether or not the holder of the copyright for the original work has granted permission.

### 3. The Second Circuit's "Pervades" Standard

There is yet a third approach, combining the bright-line authorization and "pervades" tests, though the parties have not identified it as such. Under this third approach, the creator of a derivative work would not require authorization if the pre-existing work does not "pervade" the derivative work, but would require authorization if the pre-existing work does "pervade." The fact that the parties have not separately recognized this third approach has created some difficulties because Defendant, on the one hand, presumed that this was actually the approach being advocated by Plaintiff. Plaintiff's response brief, however, made clear that this was not the case.[12] (*See* Pl.Resp., at 5.) Plaintiff, on the other hand, dismisses this approach as another misinterpretation of the requirement for copyright protection of derivative works, yet relies on cases following this approach.

The approach was first mentioned by the Second Circuit in *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27 (2d Cir.1982)[13] as a model for determining whether derivative works are copyrightable. In *Eden Toys*, the holder of a license to manufacture and sell products based on the copyrighted "Paddington Bear" sued a

manufacturer selling nightshirts featuring a print of a bear nearly identical to Paddington Bear. 697 F.2d at 30–31. Eden Toys, the plaintiff-license holder, had granted a sub-license to another manufacturer to produce a derivative work, namely a Paddington Bear gift wrap based on certain drawings created by Eden Toys. *Id.* The district court nonetheless found that Eden's use of the preexisting material copyrighted by Paddington was without permission, making the derivative drawings invalid and the sublicense inappropriate. *Id.* at 33 n. 6. Concluding otherwise, the Second Circuit observed, in a footnote, that "if Eden did not have Paddington's consent to produce a derivative work based on Paddington's copyrighted illustrations, its derivative copyrights would be invalid, since the pre-existing illustrations used without permission would 'tend[ ] to pervade the entire derivative work.'" *Id.* (quoting 1 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 3.06, at 3–21 (1982) (alteration in original)). The Second Circuit, however, determined that in this case permission was actually granted to Eden Toys such that the derivative works were valid. *Id.*

This "pervades" language was extended by the Southern District of New York in *Dynamic Solutions, Inc. v. Planning & Control, Inc.*, 646 F.Supp. 1329 (S.D.N.Y. 1986), in which a computer software writer brought a copyright infringement action against a business training program provider for a computer program derived from an earlier work. The defendant attacked the validity of the plaintiff's copyrights, contending they constituted unauthorized derivative works. *Id.* at 1340. Rejecting that argument, the court suggested that even when the author of a

---

**12.** Plaintiff's response brief quotes verbatim from Defendant's brief and then rejects it as the wrong interpretation of the meaning of "pervades." In this court's view, as discussed *infra*, this is the approach that has been adopted in the Second Circuit.

**13.** The standard of review employed by *Eden Toys* has been superceded by statute. *See Weissmann v. Freeman*, 868 F.2d 1313, 1322

(2d Cir.1989). The former rule, followed by *Eden Toys*, allowed for the appellate court to evaluate *de novo* originality of a work when it could be determined entirely by reference to documentary evidence. *Id.* But in 1985, the Federal Rules of Civil Procedure were amended so that findings of fact based on documentary evidence are not to be set aside unless clearly erroneous. *Id.; see* FED.R.CIV.P. 52(a).

derivative work uses an underlying copyright without the permission of its owner, copyright protection for the derivative work should be denied only when the pre-existing material "tends to pervade the entire derivative work." *Id.* (citing 1 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 3.06, at 3–22 (1985); *Eden Toys*, 697 F.2d at 34 n. 6).[14]

The Second Circuit's "pervades" approach thus differs from Plaintiff's in that the Second Circuit's standard acknowledges that authorization from the owner of the pre-existing work is required for a valid copyright when the pre-existing work "pervades" the derivative work. In contrast, under Plaintiff's interpretation, authorization is never necessary for a valid copyright in original parts of the derivative work (i.e., those parts not "pervaded" by the pre-existing work). For Plaintiff, a derivative work is *only* unlawful if the original work "pervades" it entirely; whether or not the creator of the original work has authorized it is irrelevant. In other words, Plaintiff finds no circumstances in which authorization would be an issue.

### 4. Proper Standard for Copyrightability of Derivative Works

 In urging rejection of bright-line authorization standard in *Gracen*, Plaintiff

makes much of the fact that it appeared by way of *dicta.* His argument is contrary to the salutary rule that "[i]n the absence of a controlling Supreme Court ruling, a federal district court is required to give great weight to the pronouncements of its Court of Appeals, even though those pronouncements appear by way of dictum." *Max M. v. Thompson*, 585 F.Supp. 317, 324 (N.D.Ill.1984). "While not excused from making an independent examination of the precise issue presented, we cannot presume that our Court of Appeals writes merely for intellectual exercise." *Id.* (internal quotes omitted) (citations omitted). This court is therefore unwilling to ignore the Seventh Circuit's reasoning in *Gracen*, even where that reasoning is arguably not a basis for the court's holding in that case.

Plaintiff's argument that *Gracen* is factually distinguishable from this matter is unpersuasive, as well. Plaintiff contends that he created an "original" work while the plaintiff in *Gracen* did not exercise any creativity in reproducing the original two-dimensional movie still in a two-dimensional painting. The court finds this distinction insufficient to distinguish *Gracen*. First, the conclusion that Plaintiff's Symbol-guitar was an "original" work belongs solely to Plaintiff. Indeed, as discussed below, Defendant urges the contrary.[15] Additionally, even if such a factual distinc-

14. Courts have followed the Second Circuit's "pervades" analysis in evaluating whether authorization was required for a valid copyright in derivative works. *See., e.g., JBJ Fabrics, Inc. v. Brylane, Inc.*, 714 F.Supp. 107, 110 (S.D.N.Y.1989) ("even if plaintiff's use of the underlying design were unlawful, it would be entitled to protection for its original contributions absent some showing by defendant that the unlawful use pervaded the entire work"). Plaintiff offers two cases as evidence that courts in this district have also rejected *Gracen* in favor of the "pervades" approach, namely *Theotokatos v. Sara Lee Personal Prods.*, 971 F.Supp. 332 (N.D.Ill.1997), and *Liu v. Price Waterhouse L.L.P.*, No. 97 C 3093, 1999 WL 47025 (N.D.Ill. Jan. 25, 1999). They are discussed more fully *infra*.

15. Defendant insists that Plaintiff's work is, in fact, not sufficiently original to merit copyright protection. Plaintiff responds that transforming a two-dimensional drawing (the

Symbol) into a three-dimensional sculpture (the Symbol-guitar) exhibits sufficient creativity and originality to merit copyright protection. The court need not decide the issue here, but notes that courts have fallen on both sides of the debate of whether converting a two-dimensional design to a three-dimensional object constitutes a copyrightable effort. *Compare Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1223 (9th Cir.1997) (originality of three-dimensional costumes from two-dimensional drawings upon which they were based not sufficient to maintain a copyright because any differences that existed were functional considerations not to be considered), *and Gallery House, Inc. v. Yi*, 582 F.Supp. 1294, 1297 (N.D.Ill.1984) (simply converting a two-dimensional design to a three-dimensional bronze statue does not constitute a copyrightable effort without sufficient original artistic contribution) *with W. Goebel Porzellanfabrik v.*

tion exists, it is immaterial to determining whether authorization from the copyright author is required for a valid copyright for a derivative work. Plaintiff conflates two separate issues, originality with valid copyright.[16]

Plaintiff also stresses that courts in this district have rejected the *Gracen dictum* in favor of a "pervades" analysis. Plaintiff cites two cases in particular. In *Theotokatos v. Sara Lee Personal Prods.*, 971 F.Supp. 332 (N.D.Ill.1997) (Castillo, J.), the plaintiff had designed a t-shirt for the 1996 Summer Olympics employing the Olympic torch and rings. After registering his designs for copyright protection, plaintiff submitted his designs to Sara Lee, a major sponsor and licensee of the Olympic games, for possible use on t-shirts. *Id.* at 336. Sara Lee rejected his designs, but advised him to contact some of its sublicensees. *Id.* The plaintiff alleged that Andazia, one of the sublicensees, later submitted a substantially similar design to Sara Lee, which was ultimately approved and printed on t-shirts. *Id.* He also claimed that another Sara Lee t-shirt design infringed one of his designs. *Id.* at 337. On the motion to dismiss, the court first found that the plaintiff's designs possessed the requisite level of originality for copyright protection. *Id.* at 338. The court next discussed whether plaintiff's copyrights for derivative works were invalid because he failed to obtain authorization

to use the Olympic rings, a protected design owned by the United States Olympic Committee. Finding other grounds for dismissal, the court did not reach the "difficult question" of whether the Olympic rings pervade the works as a whole. *Id.* at 340. Based on that discussion, Plaintiff claims that *Theotokatos* rejected the language of *Gracen* as merely *dicta* and instead indicated that whether the original design "pervaded" the derivative work was the significant question.

In *Liu v. Price Waterhouse L.L.P.*, No. 97 C 3093, 1999 WL 47025 (N.D.Ill. Jan. 25, 1999) (Holderman, J.), the plaintiff filed a complaint for copyright infringement of a computer software program. The plaintiff, one of a group of Chinese programmers, had been hired by Price Waterhouse to prepare a derivative work based on one of its programs. *Id.* at *1. The parties disputed the extent to which Price Waterhouse authorized the Chinese programmers to use the original computer program. *Id.* Notably, however, a June 7, 1995 letter between the parties authorized the Chinese programmers to prepare a derivative work, although it did not explicitly authorize them to copyright that derivative work. *Id.* at *3. The court also found that the letter did not explicitly prohibit them from copyrighting their derivative work. *Id.* On its motion for summary judgment, Price Waterhouse argued that the absence of any authorization to copy-

*Action Indus., Inc.*, 589 F.Supp. 763, 767 (S.D.N.Y.1984) (translation of sketches into three-dimensional art works, including figurines, plaques, plates, bells, and dolls, adds sufficient creative effort to make the "Hummel figures" protected under copyright laws).

Common to all these cases is the fact that the derivative work consisted of transforming the two-dimensional drawing directly into a three-dimensional figure. For example, a costume of the Pillsbury Doughboy was based on a drawing of the Doughboy. *See Entertainment Research Group*, 122 F.3d at 1214 n. 2. None of the cases involved a derivative work that *incorporated* the two-dimensional drawing into a different three-dimensional work. The amount of original artistic contribution ascribed to the former is arguably less than that found in the latter. Plaintiff here

did not merely convert the two-dimensional Symbol into a three-dimensional sculpture. He instead incorporated the Symbol into an entirely new creation, a Symbol-guitar. Whether this exhibits the requisite originality to merit copyright protection is not a question that this court need answer, however, for reasons discussed in the text.

16. Plaintiff's argument is simply his reading of *Gracen*'s facts under the lens of his version of the "pervades" standard. He seemingly contends that a derivative work that is sufficiently original, which Plaintiff implies is one where the pre-existing work does not pervade the derivative work, would not suffer from an invalid copyright. Therefore, he is not arguing so much that the facts of *Gracen* are distinguishable from this case as he is advocating for his proposed standard to apply.

right the derivative work necessarily rendered the plaintiff's copyright invalid pursuant to *Gracen*. *Id.* Disagreeing, the court instead apparently declined to follow the *Gracen* doctrine as mere *dictum*. *Id.* at *3 – *4. Plaintiff thus interprets *Liu* also to reject the dicta· in *Gracen* as an incorrect statement of law.

Plaintiff's view on both cases is mistaken on several fronts. First, in *Theotokatos*, while the court did perceive the language in *Gracen* to be *dicta*, the court did not reach the question of whether the pre-existing work pervaded the derivative work as a whole because it dismissed the case. on other grounds. 971 F.Supp. at 340. In. other words, as Defendant notes, the adoption of the "pervades" standard in *Theotokatos* is itself *dictum*. Additionally, the court acknowledged that the result in *Gracen* and its progeny would have been decided the same way under a standard that considered whether the original design "pervades" the new one. *Id.* at 341 n. 2. That acknowledgment, combined with the lack of explanation as to why a "pervades" standard should apply, makes *Theotokatos* weak authority for rejecting *Gracen*'s bright-line authorization approach. Finally, *Theotokatos* actually undermines Plaintiff's position because *Theotokatos* supports the Second Circuit's interpretation of the "pervades" analysis, which Plaintiff himself has rejected as a misinterpretation of section 103(a). (*See* Pl.Resp., at 5.)

Furthermore, *Liu* is factually distinguishable from the case at hand because the plaintiff there did have authorization to prepare a derivative work. *See* 1999 WL 47025, at *3. The dispute instead centered on whether the same letter that granted authorization to prepare the work also granted authorization to copyright that derivative work. *Id. Liu*'s rejection of *Gra-*

cen therefore disagreed only with the suggestion in *Gracen* that one who obtains a license (i.e., authorization) from the author of the copyrighted work to prepare a derivative work must also receive explicit authorization to copyright that derivative work. As further support that *Liu* was not a rejection of the bright-line authorization test, the court notes that *Liu* did not adopt a "pervades" standard as the correct approach; in fact, *Liu* never mentions the competing "pervades" analysis.

The *Gracen* bright-line authorization standard also garners some support from the oft-quoted Professor Nimmer. In explaining the nature of a derivative work, Professor Nimmer explains:

> A work is not derivative unless it has *substantially* copied from pre-existing works. If that which is borrowed consists merely of ideas and not of the expression of ideas, then although the work may have in part been derived from prior works, it is not a derivative work. Put another way, a work will be considered a derivative work only if it would be considered an infringing work if the material that it has derived from a pre-existing work had been taken without the consent of a copyright proprietor of such pre-existing work. *It is saved from being an infringing work only because the borrowed or copied material was taken with the consent of the copyright owner of the prior work,* or because the prior work has entered the public domain.

1 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 3.01, at 3–3 (1997) (second emphasis added). In this court's view, if a derivative work needs the consent of the copyright owner of the pre-existing work to avoid infringement, a valid copyright would certainly not adhere in a case where consent was not obtained.[17] It seems

17. Admittedly, even Professor Nimmer's treatise, cited ubiquitously as authority in copyright cases, does not answer this matter conclusively. Professor Nimmer addresses what he calls the "lawful use of the underlying work as a condition to a derivative copyright." He states that if the pre-existing work

upon which a given derivative work is based is protected by copyright, its unauthorized incorporation in a derivative work will constitute an act of copyright infringement. NIMMER, *supra*, § 3.06, at 3–34.21. When considering whether without consent of the copyright

highly unlikely that a valid copyright could attach to such an infringing work. *See Harris Custom Builders, Inc. v. Hoffmeyer,* 92 F.3d 517, 521 (7th Cir.1996) (intimating that the unauthorized act of an infringer would not receive protection under the Copyright Act); *Anderson v. Stallone,* No. 87–0592, 1989 WL 206431, at *10 (C.D.Cal. Apr. 25, 1989) ("generally no part of an infringing derivative work should be granted copyright protection"); H.R.REP. No. 94–1476, at 57–58 (1976) (section 103(a) of the Copyright Act prevents an infringer from benefitting from an unlawful act through copyright protection).

Lastly, the court notes that *Gracen* need not be read to be conflicting with the Second Circuit's interpretation. It is possible to harmonize the two standards: the bright-line authorization standard may apply in all cases where the pre-existing work clearly "pervades" the derivative work; indeed, unless the pre-existing work "pervades" the new one, arguably the newer work is not "derivative" at all.[18] The court does recognize that no Seventh Circuit case has addressed this matter specifically. Plaintiff has not, however, presented any compelling support for adoption of

his "pervades" approach. Neither has any court followed Plaintiff's version of the "pervades" approach.

■ The court is therefore willing to rest its findings on the *dicta* of *Gracen* and hold that Plaintiff's copyright in the Symbol-guitar is invalid because he lacks the necessary authorization from Defendant for use of the Symbol. Without deciding the issue as a matter of law, the court notes it is not certain that the result in this case would be different under the alternative analysis urged by Plaintiff. Notably, Plaintiff contends that he holds a valid copyright in those parts of his work that do not employ Defendant's symbol, even if no permission was obtained, because the Symbol does not "pervade" the derivative work. Plaintiff repeatedly insists that he has copyright protection under section 103(a) in the added original "parts" not found in the Symbol. (*See* Pl. Memo, at 3–4.) After urging adoption of the "pervades" analysis as the correct test, Plaintiff submits that "Defendant's two-dimensional symbol does not 'pervade' Mr. Pickett's three-dimensional guitar. The guitar has more than sufficient additional

owner of the pre-existing work the author of a derivative work still may claim copyright, he concludes that section 103(a) permits copyright in that which was originally contributed to such work even though the derivative author may be an infringer as to that which was borrowed from the pre-existing work. *Id.* at 3–34.21 – 3–34.22. Thus, "only that portion of a derivative ... work that employs the pre-existing work would be denied copyright." *Id.* at 3–34.22. This seems to negate a bright-line authorization standard because it suggests that even without consent, a valid copyright may be maintained in original contributions. The court does note, however, that the statutory language does not require this result.

On the meaning of section 103(a) of the Copyright Act, Professor Nimmer explains, "[t]he effect generally would be to deny copyright to derivative works, in which the preexisting work *tends to pervade* the entire derivative work, but not to collective works, where the infringement arises from the copying of the selection and arrangement of a number of preexisting works, and not *per se* from the reproduction of any particular prior work."

*Id.* at 3–34.22 – 3–34.23 (emphasis added). Curiously, though, he cites as support for this proposition *both* the cases following the Second Circuit's "pervades" standard and *Gracen* and its progeny. *See id.* at 3–34.22 n. 12.

Professor Nimmer also looks to the House Report, which comments on section 103(a) as conditioning copyright in a derivative work upon the pre-existing material not having been used "unlawfully" rather than merely without the consent of the copyright owner of such pre-existing material. *Id.* at 3–34.23. The two situations where use could be lawful, even without consent, are under the doctrine of fair use or an applicable foreign law. *Id.* Plaintiff does not attempt to fit his case into the two exceptions; in any event, it is clear that neither case would apply here.

**18.** This conclusion is consistent with Professor Nimmer's observations. Significantly, Plaintiff concedes that the Symbol-guitar is a derivative work and may not now argue the differences between his guitar and Defendant's Symbol precludes that characterization.

creative aspects to it that are not present in the symbol, but are above and beyond the symbol." (*Id.,* at 8.) Notably, he never explains what those original, creative parts are. Defendant argues that Plaintiff cannot do so "without conceding that the only elements added to Defendant's Symbol are the functional necessities associated with a guitar." (Def. Reply, at 9.) The court finds the argument persuasive.

Merriam Webster's Collegiate Dictionary defines "pervade" as "to become diffused throughout every part of." A comparison of the Symbol and Plaintiff's Symbol-guitar shows that all aspects of the Symbol appear to be incorporated by the guitar, from the arrowhead point, to the crossbow and horn-shaped pieces in the middle, to the round body. (*Compare* Symbol, Figure 2 *with* Plaintiff's Symbol-guitar, Figure 4.) The shape of the guitar itself is in the shape of Defendant's Symbol. The only arguably "original" aspects of the Symbol-guitar would include those things considered functional to a guitar, such as the strings or the neck of the instrument. Such utilitarian aspects are outside the protection of copyright law. 17 U.S.C. § 101; *cf. American Dental Assoc. v. Delta Dental Plans Assoc.,* 126 F.3d 977, 980 (7th Cir.1997) ("[a] lamp may be entirely original, but if the novel elements are also functional the lamp cannot be copyrighted").

Finally, as a matter of policy, the court is sympathetic to Defendant's concern that the court should not support creation of a *de facto* monopoly on derivative works to the detriment of the owner of the copyright in the preexisting work. *See Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.,* 122 F.3d 1211, 1224 (9th Cir.1997) (denying copyright protection to derivative works on the ground that the rights of the holder of the underlying copyrighted product would be affected), *cert. denied,* —— U.S. ——, 118 S.Ct. 1302, 140 L.Ed.2d 468 (1998); *Ets–Hokin v. Skyy Spirits Inc.,* No. C 96–3690, 1998 WL 690856, at *8 (N.D.Cal. Sept. 28, 1998) (same). In *Entertainment Research Group,* the plaintiff designed and manufac-

tured three-dimensional inflatable costumes to be purchased by companies and used at publicity events. 122 F.3d at 1214. The costumes were based on the companies' cartoon characters and were recognized as derivative works. *Id.* The plaintiff sued for copyright infringement when his former marketer and another manufacturer started selling allegedly substantially similar costumes. *Id.* at 1215. The Ninth Circuit affirmed the district court in denying copyright protection to the derivative works on the grounds that the rights of the holder of the underlying copyrighted characters would be affected. *Id.* at 1224. The court acknowledged that the costumes were so similar to the copyrighted cartoon characters that granting a copyright in the costumes would have the

> practical effect of providing ERG with a de facto monopoly on all inflatable costumes depicting the copyrighted characters also in ERG's costumes. Indeed, if ERG had copyrights for its costumes, any future licensee who was hired to manufacture costumes depicting these characters would likely face a strong copyright infringement suit from ERG.

*Id.* This, the court concluded, would be inappropriate.

Similarly, granting copyright protection to Plaintiff's Symbol-guitar in this case may effectively deprive Defendant of his exclusive right to produce additional derivative works based on the Symbol. For example, as Defendant points out, Plaintiff may well then possess the exclusive right to produce certain additional derivative works based on the Symbol, such as a Symbol-shaped bass guitar or a Symbol-shaped violin. That would undoubtedly dilute Defendant's rights in his own copyright in the Symbol, which includes the exclusive right to prepare derivative works based on the copyrighted work. Such a dilution would be an inappropriate result under the Copyright Act. *See* 17 U.S.C. § 103(b); *Entertainment Research Group,* 122 F.3d at 1219 ("In deciding whether to grant copyright protection to a derivative work, courts must be concerned about the

impact such a derivative copyright will have on the copyright privileges and rights of the owner of the underlying work.").

Following the bright-line authorization standard in *Gracen*, the court therefore holds that Plaintiff's copyright in the Symbol-guitar is invalid because it is uncontested that Plaintiff lacked authorization. Although it need not reach the issue, the court notes Defendant's strong evidence that the Symbol pervades Plaintiff's derivative work, the Symbol-guitar, such that even under the Second Circuit's "pervades" standard, Plaintiff needed Defendant's permission for a valid copyright.

Because that permission was not obtained, Plaintiff's copyright in the derivative work is not valid, and he is unable to establish a prima facie case of copyright infringement. Summary judgment is therefore granted in favor of Defendant, who now has good reason to "go crazy" and "party like it's 1999." After five long years of litigation, this court does not doubt that will be the case.

## CONCLUSION

For the reasons discussed above, the court grants summary judgment for Defendant and dismisses the case.